IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARRIE SUMMERVILLE ) | CIVIL DIVISION |
| ) | |
| Plaintiff, ) | No. 2:09-cv-3261 |
| ) | |
| v. ) | |
| ) | |
| PROGRESSIVE SPECIALTY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | The Honorable R. Barclay Surrick |

### BRIEF IN SUPPORT OF MOTION TO BIFURCATE AND STAY DISCOVERY

Now comes the Defendant, Progressive Specialty Insurance Company, ("Progressive"), by and through its attorneys, Dapper, Baldasare, Benson, Behling & Kane, P.C. and Forry Ullman, and files the following Brief in Support of its Motion to Bifurcate and Stay Discovery.

### I.   INTRODUCTION

Plaintiff initiated this action against Progressive seeking to recover underinsured motorist ("UIM") benefits and asserting claims for breach of contract and insurance bad faith. Bifurcation of the bad faith claim from the UIM claim and a stay of the discovery of the bad faith claim pending adjudication of the UIM claim is necessary to avoid the prejudice that would result to Progressive if Plaintiff is entitled to litigate all claims simultaneously. Progressive would be prejudiced because:

    (a)    The evidence regarding Plaintiff's UIM claim (that is, a tortfeasor's liability for, and an insured's damages from, a motor vehicle accident) is completely distinct from evidence regarding Plaintiff's bad faith claim (that is, whether there was a reasonable basis for Progressive's handling of Plaintiff's UIM claim and a reckless disregard of any lack thereof);

    (b)    Plaintiff will seek discovery of certain privileged, confidential, and/or otherwise protected information, which may be discoverable during the bad faith claim, but would clearly not be discoverable in Plaintiff's UIM claim because it constitutes materials protected by the work product doctrine for that UIM claim;

    (c)    In order to protect certain privileged, confidential, and/or otherwise protected information from being discoverable during Plaintiff's UIM claim, Progressive may be effectively deprived of the opportunity to affirmatively use such materials in the defense of Plaintiff's bad faith claim which would unfairly deprive Progressive of the right to assert all affirmative defenses, such as advice of counsel; and

    (d)    Both Plaintiff and Progressive's UIM lawyers may be witnesses in the bad faith litigation, which raises the specter of the potential for disqualification under Rules of Professional Conduct even for the UIM claim if the claims are not severed and stayed.

By filing this Brief in Support of its Motion to Bifurcate and Stay Discovery, Progressive does not concede that any specific privileged, confidential, and/or otherwise protected material is discoverable during the litigation of Plaintiff's UIM breach of contract claim. Nor does Progressive concede that any specific privileged, confidential, and/or otherwise protected material would be discoverable in a bad faith case. Rather, Progressive seeks to establish that without even considering whether specific documents are privileged for either the UIM claim or bad faith claim, judicial economy and efficiency will be advanced by bifurcation and a stay at this time.

## II.    PROCEDURAL HISTORY OF THE CASE

On or about June 25, 2009, Plaintiff filed her Complaint in the Court of Common Pleas of Philadelphia County. On or about July 23, 2009, Progressive removed Plaintiff's Complaint to the United States District Court for the Eastern District of Pennsylvania.

### III.  STATEMENT OF PERTINENT FACTS

On November 22, 2007, Plaintiff was involved in a motor vehicle accident, and as a result, Plaintiff alleges to have suffered injuries. (Compl. at ¶¶ 3, 4.) Plaintiff asserted that the tortfeasor was underinsured and demanded underinsured motorist benefits from Progressive. (Compl. at ¶ 16.) At the time of the accident, Plaintiff was allegedly covered by an insurance policy with Progressive, which provided UIM coverage in the amount of $50,000 per person. (Compl. at ¶ 14.) Plaintiff asserts that she is entitled to recover $50,000 in UIM benefits. (Compl. at ¶ 16.) Plaintiff also asserts that Progressive handled her UIM claim in bad faith, and requests damages therefor.

### IV.  STATEMENT OF THE QUESTION INVOLVED

WHETHER THIS COURT SHOULD BIFURCATE PLAINTIFF'S BAD FAITH CLAIM FROM PLAINTIFF'S UIM CLAIM AND STAY DISCOVERY ON PLAINTIFF' BAD FAITH CLAIM WHERE PROGRESSIVE WOULD SUFFER PREJUDICE IF BOTH CLAIMS WERE TO PROCEED SIMULTANEOUSLY.

Suggested Answer:   YES.

### V.  ARGUMENT

A.  **The Majority View Supports Bifurcation.**

1.  **The United States District Court for the Eastern District of Pennsylvania has Effectively Approved of Bifurcation and a Stay of Discovery.**

The United States District Court for the Eastern District of Pennsylvania has found bifurcation to be appropriate in a directly analogous case. In <u>Reinhart v. Progressive Insurance Company</u>, No. 09-cv-1167, (Eastern District of Pennsylvania, April 16, 2009), the Honorable Juan R. Sanchez issued a Scheduling Order effectively providing for bifurcation and a stay of bad faith discovery until the conclusion of the trial on Plaintiff's UIM claim after Progressive

filed a Motion to Bifurcate and Stay. A copy of Judge Sanchez's April 16, 2009 Order is attached hereto as Exhibit A.

2.   **The Pennsylvania Trial Courts have Split on Bifurcation of UM/UIM Claims from Bad Faith Claims Under the More Limited Protections Afforded by the "Trial Preparation Materials" Privilege Under the Disparate State Court Discovery Rules.**

The question of whether to bifurcate the UM/UIM claim from a bad faith claim has been addressed by two trial courts in Pennsylvania. See Boerner v. Progressive, 2008-C-0499 (Lehigh County, May 1, 2008) (Exhibit B); Gunn v. The Automobile Ins. Co. of Hartford, Connecticut, No. GD 07-002888 (Allegheny County, July 25, 2008), appeal denied, 2009 WL 1001029, 2009 Pa. Super. 70 (April 15, 2009) (Exhibit C).[1] While the court in Boerner provided for the bifurcation and stay of a bad faith claim from a UIM claim, the court in Gunn did not. The rationale of the Gunn decision, however, is inapposite to the present matter because it involved a different standard for the "work product" privilege.

In Boerner, the defendant filed a motion to sever the bad faith claim from the underlying UIM claim and to stay discovery of the bad faith claim pending resolution of the UIM claim. The court issued a Scheduling Order effectively providing for a bifurcation and stay of the bad faith claim from the UIM claim. A copy of the May 1, 2008 Scheduling Order is attached hereto as Exhibit B.

In Gunn, the defendant filed a motion for protective order seeking to bifurcate and stay discovery on the bad faith claim until the underlying UIM claim was resolved. The trial court acknowledged that bifurcation and a stay is appropriate in other jurisdictions that afford protection to privileged materials under the work product doctrine. However, the trial court

---

[1] Other Pennsylvania trial courts have addressed the very different issue of whether UM/UIM claims should be severed from a negligence claim against a tortfeasor. See, e.g. Collins v. Zeiler, 08-014817 (Allegheny Co., 2008), Moyer v. Harrigan, 1684-2008 (Lackawanna Co., 2008), and Jannone v. McCooey, 2320-2008 (Pike Co., 2009).

4

declined to stay discovery of the bad faith claim based on three significant considerations not present in this matter. First, the trial court's decision in <u>Gunn</u> was dictated in part by the fact that the bad faith claim would be decided in a non-jury setting, and the court believed that the judge presiding over the UIM jury trial would ordinarily be in the best position to decide the case immediately after the jury trial. Since there is a right to a jury trial for bad faith cases in federal court, that consideration of judicial economy is not relevant in federal court.

Second and more significant, the trial court emphasized that its decision was predicated on the limited protection afforded to "trial preparation materials" under by Pennsylvania Rule of Civil Procedure 4003.3. The trial court explained that pursuant to State Rule 4003.3 "the only trial preparation material that is protected with respect to a party's representative other than a party's attorney is the representative's 'mental impressions, conclusions or opinions respecting the value or merit of a claim or defense respecting strategy or tactics." <u>Id.</u> at 7. The trial court, however, recognized that under Federal Rule of Civil Procedure 26(b)(3), an insurer's "work product" more broadly includes any material "prepared in anticipation of litigation or for trial by or for another party or its representative."  <u>Id.</u> at 10. The trial court thus discounted and distinguished the case law from other federal jurisdictions and the state jurisdictions that have adopted the federal work product doctrine embodied in Rule 26 based on this crucial difference:

> In deciding to stay the bad faith proceedings, the critical issue for the courts is usually whether discovery of the insurance company's work product, protected by the relevant discovery rules, will result in prejudice to the insurance company. **However, the protection afforded work product in other jurisdictions is much broader [than in Pennsylvania].**
>
> \*   \*   \*
>
> Thus, the issue which courts of other jurisdictions address is whether the insurance company will be prejudiced by furnishing reports that have evidentiary value such as summaries of

5

>interviews with witnesses, reports of investigators hired by the insurance company, etc. In Pennsylvania, these reports are discoverable for the UIM claim. Consequently, rulings in other jurisdictions which stay proceedings in order to preserve the work product protection afforded trial preparation materials do not apply to Pennsylvania.

Id. at 10-11 (emphasis added). As such, while the expansive work product protection may not have applied in Gunn, it will certainly apply in the United States District Court for the Eastern District of Pennsylvania based upon the provisions of Rule 26.

Third, the Gunn opinion noted that Plaintiff's bad faith claim did not involve a claim based on insurance practices but was rather based primarily on the evidentiary information in the insurer's file. The trial court acknowledged that in cases where a bad faith claim is based upon insurance practices, a stay of bad faith discovery may be appropriate. Although Progressive specifically denies any and all allegations of bad faith regarding its insurance practices, there may be extensive discovery regarding these allegations, which will be both burdensome and expensive for the parties to this matter. This evidence is not necessary for the trial of the UIM claim and is wholly unrelated to the UIM claim.

The trial judge in Gunn also incorrectly discounted, or failed to consider, the additional issues of prejudice which dictate that bifurcation is proper—i.e., the fundamental differences in the nature of the evidence regarding a UIM claim and a bad faith claim, the deprivation of an insurer's full array of affirmative defenses such as advice of counsel, and the potential disqualification issues flowing from the possibility that the insurer's UIM attorneys may be witnesses in the bad faith litigation.[2]

---

[2] In Gunn v. The Automotive Insurance Company of Hartford, 971 A.2d 505 (Pa. Super. 2009), the Superior Court denied Hartford's appeal of Judge Wettick's decision because Judge Wettick's Order did not qualify as an appealable collateral Order. The majority did not address the merits of the appeal. However, in a dissenting opinion, Judge Lally-Green noted that she would have granted the appeal. She also addressed the merits. Judge Lally-Green noted that the trial court's discovery Order carried a significant risk that privileged and otherwise

6

### 3. Courts in Other Jurisdictions Have Found Severance of UM/UIM Claims from Bad Faith Claims to be Appropriate.

In Dahmen v. American Family Mut. Ins. Co., 635 N.W.2d 1 (Wis.Ct. App. 2001), the Wisconsin Court of Appeals recognized the risk of prejudice to the insurer where discovery proceeds on a bad faith claim while an underlying UIM benefits claim against the same insurer remains unresolved. Id. at 6. The Court noted that bifurcation may enhance, rather than defeat, the interests of judicial economy and possible settlement. Id. Accordingly, the Court concluded that the trial court abused its discretion in denying the motion to bifurcate and stay discovery. Id. at 7.

In Wittmer v. Jones, 864 S.W.2d 885 (Ky. 1993), the Kentucky Supreme Court held that the failure to bifurcate the underlying negligence claim from the bad faith claim constitutes prejudicial error. Although the Court found that no actual prejudice occurred, the Court stated that if it were going to reverse and order a new trial, it would also order bifurcation of the bad faith claim. Wittmer, 864 S.W.2d at 891.

The Kentucky courts follow the same reasoning when the matter involves a breach of contract claim for UM/UIM benefits and a bad faith claim. See Motorists Mut. Ins. Co. v. Glass, 996 S.W.2d 437, 450 (Ky. 1997), citing Wittmer v. Jones, 864 S.W.2d 885, 891 (Ky. 1993). *See also* Jones v. Liberty Mut. Fire Ins. Co., 2007 WL 2287886 (W.D.Ky. 2007) (where the district court "bifurcated the bad faith claims and stayed discovery on that aspect of the case pending final adjudication of the contract claim").

---

confidential information "will be disclosed prematurely, before there is even an adverse ruling on the underlying claim. In my view, there would most often be no basis for a bad faith claim if the trial court rules in the insurer's favor on the underlying claim." Judge Lally-Green went on to note her concern "that insurers will be forced into unfair settlements as a result of having to litigate and provide discovery on both claims at the same time." Lastly, Judge Lally-Green wrote that "bad faith claims (and discovery thereon) should be routinely stayed until the resolution of the underlying UM/UIM claim. I would hold that the benefits of judicial economy and efficiency cited by the trial court are generally outweighed by the danger of unfair prejudice to the insurer." Id.

In Nevada, courts have also bifurcated the trial of the bad faith claim from the trial of the underlying UIM claim. Cook v. United Serv. Auto. Ass'n, 169 F.R.D. 359 (D.Nev. 1996).

Several other states have also concluded that bifurcation of a bad faith claim from a UM/UIM claim was necessary. See, e.g., Angel v. Liberty Mut. Group, 2005 WL 1252419 (Ohio Ct. App. May 26, 2005); Estate of Taylor v. St. Paul Cos., 268 F.Supp.2d 873 (N.D.Ohio 2002); Braddy v. Nationwide Mut. Liability Ins. Co., 470 S.E.2d 820, 822 (N.C.App. 1996); Hunte v Amica Mut. Ins. Co., 792 A.2d 132, 135 (Conn.App. 2002); Dakota, Minnesota & Eastern Railroad Corp. v. Acuity, 720 N.W.2d 655 (S.D. 2006); but see Newport v. USAA, 11 P.3d 190 (Okla. 2000) (state court concluded that it had no authority to require the insureds to submit to separate trials and therefore, bifurcation was not available).

**B.     Because the Issues and Evidence in a UM/UIM Claim are Completely Different than in a Bad Faith Case, Bifurcation and a Stay of Bad Faith Discovery is Appropriate, Particularly Because of the Work Product Doctrine and/or Attorney-Client Privilege Issues that Potentially Arise in a Bad Faith Case.**

The focus in Plaintiff's UIM claim will be the liability of the tortfeasor and the amount of damages to which Plaintiff would have been entitled if the tortfeasor had sufficient insurance. The focus in Plaintiff's bad faith case is quite different. In Pennsylvania, to recover on a bad faith claim, Plaintiff must show by clear and convincing evidence that the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew or recklessly disregarded its lack of a reasonable basis. Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa.Super. 1994). According to former Chief Justice Cappy of the Pennsylvania Supreme Court, "bad faith under the statute is established on a showing that the insurer breached its duty to act in good faith and fair dealing with its insured by any frivolous or unfounded refusal to pay the policy through some motive of self-interest or ill will." Hollock v. Erie Ins.

Exch., 903 A.2d 1185, 1187 (Pa. 2006) (Cappy, C.J. dissenting). Thus, "motive of self-interest or ill will" may be considered when determining whether an insurer knew or recklessly disregarded its reasonable basis for denying a claim. Greene v. United Serv. Auto. Ass'n, 936 A.2d 1178, 1190 (Pa.Super. 2007).

In Zappile v. AMEX Assur. Co., 928 A.2d 451 (Pa.Super. 2007), appeal denied 940 A.2d 366 (Pa. 2007), the court held that an uninsured or underinsured motorist claim is "inherently and unavoidably adversarial." Id. at 255-256, citing Condio, 899 A.2d at 1143-1144. Because UM/UIM claims are inherently and unavoidably adversarial, it would not be appropriate to allow an insured to discover mental impressions, conclusions, and opinions on value, merits, strategy, and tactics of the UIM claim while the UIM claim is still being litigated. Any such discovery would be inconsistent with the Federal Rules of Civil Procedure, as Rule 26(b)(3) expressly provides that the Court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED.R.Civ.P. 26(b)(3).

However, because Plaintiff will seek to establish that Progressive lacked a reasonable basis in "denying" their UIM claim, Plaintiff may seek discovery of certain privileged, confidential, and/or otherwise protected information from Progressive in the context of the bad faith claim, including, for example, Progressive's claim file. The claim file may include information regarding merits, value, strategy, tactics, and mental impressions. Likewise, Progressive will seek to counter Plaintiff's assertions of bad faith with evidence supporting its reasonable basis for its handling of Plaintiff's UIM claim. To demonstrate its reasonable basis, Progressive may seek to affirmatively use certain privileged, confidential, and/or otherwise protected information, such as evaluations of the claim, the reports of specially retained experts

who may not be called as witnesses at trial, and the reports of jury and trial consultants. In the event that Plaintiff's bad faith claim is not severed and discovery stayed, Progressive may be forced to choose between a potential waiver of its privileges or loss of affirmative evidence, and could be deprived of the opportunity to use this information solely to avoid production of privileged material in the UIM claim while it is still being litigated.

Further, it is not uncommon for insurers, like Progressive, to rely on testimony or even advice of counsel in defense to a bad faith claim, thereby making the attorney who defended the UM/UIM claim a potential witness in the litigation of the bad faith claim. See, e.g., Condio, 899 A.2d at 1146 (where actions of insurer's outside counsel were introduced as evidence to establish a reasonable basis for denial of benefits); Zappile, 928 A.2d at 258-260. Similarly, the attorney prosecuting the UM/UIM claim for the insured is commonly called as a witness in a bad faith trial, particularly when there are issues surrounding alleged delay or miscommunication. The Rules of Professional Conduct, however, generally do not allow attorneys to be material witnesses in cases in which they act as advocates. See, PA. R.P.C. 3.7. Without bifurcation and a stay of discovery on the bad faith claim, both parties will be compelled to make the decision whether to call their lawyer as a witness. If Plaintiff's claims for bad faith are severed and stayed, the parties do not have to needlessly and prematurely determine whether to call their lawyer as a witness in the bad faith case, sparing various ethical and cost considerations.

In addition, bifurcation and a stay of discovery on the bad faith claim will not frustrate judicial economy or waste judicial resources for several reasons. First, adjudication of Plaintiff's UIM claim to a result in favor of Progressive would likely obviate the need to proceed any further with Plaintiff's bad faith claim. Second, prior to the Koken decision, many UM/UIM cases were resolved during or after arbitration and without the subsequent filing of a bad faith

lawsuit. As such, bifurcation and a stay on the bad faith claim may foster settlement, before costly and potentially unnecessary bad faith discovery occurs. Third, Plaintiff's UIM claim can proceed very expeditiously through discovery and trial as the distinct issues presented by that claim will be the liability and damages for a motor vehicle accident, rather than the more detailed and time-consuming issue related to the reasonableness of Progressive's claim handling. Fourth, the cost of expert witnesses who may be employed solely for the bad faith claim can be deferred and possibly avoided in its entirety.

## VI. CONCLUSION

For all of the foregoing reasons, Progressive respectfully requests that this Honorable Court grant Progressive's motion to bifurcate Plaintiff's bad faith claim from Plaintiff's UIM claim and to stay discovery on the bad faith claim.

          Respectfully submitted,

          DAPPER, BALDASARE, BENSON,
          BEHLING & KANE, P.C.

By:  /s/ Robert E. Dapper, Jr.

          Robert E. Dapper, Jr.
          PA I.D. #46378
          rdapper@d3bk.com

          Daniel J. Twilla
          PA I.D. #93797
          dtwilla@d3bk.com

          Four Gateway Center, 10th Floor
          444 Liberty Avenue
          Pittsburgh, PA  15222
          (412) 456-5555

          and

          FORRY ULLMAN

          E. Laurence Kates
          PA I.D. #37059
          lkates@forry ullman.com

          Two Commerce Square
          26th Floor
          2001 Market Street  Suite 2630
          Philadelphia, PA  19103

          *Attorneys for Defendant, Progressive Specialty Insurance*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on August 28, 2009, a copy of the within **BRIEF IN SUPPORT OF MOTION TO BIFURCATE AND STAY DISCOVERY** was filed electronically. Notice of this filing will be sent to all Parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

> Daniel M. Jaffe, Esquire
> 1500 Walnut Street
> Suite 1620
> Philadelphia, PA  19102
>
> *Counsel for Plaintiff*

/s/ Robert E. Dapper, Jr.
Robert E. Dapper, Jr.
Daniel J. Twilla