# EXHIBIT C

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

BARBARA J. GUNN,                          CIVIL DIVISION

                    Plaintiff

                                          NO. GD07-002888
          vs.

THE AUTOMOBILE INSURANCE                  OPINION AND ORDER OF COURT
COMPANY OF HARTFORD,
CONNECTICUT,

                    Defendant             HONORABLE R. STANTON WETTICK, JR.


Counsel for Plaintiff:

Kenneth Nolan, Esquire
10th Floor U.S. Steel Building
600 Grant Street
Pittsburgh, PA  15219-2705

Counsel for Defendant:

Avrum Levicoff, Esquire
Suite 1900 Centre City Tower
650 Smithfield Street
Pittsburgh, PA  15222-3911

NO. GD07-002888

## OPINION AND ORDER OF COURT

WETTICK, J.

Plaintiff has filed a two-count complaint. Count I is a breach of contract claim ("UIM claim") against her insurance carrier ("Hartford") for failure to pay underinsurance motorist benefits. Count II is a bad faith claim based on Hartford's failure to act on plaintiff's claim for underinsured motorist benefits in good faith in violation of 42 Pa.C.S. §8371.

The subject of this Opinion and Order of Court is a motion for a protective order of Hartford to stay discovery that is relevant only to plaintiff's bad faith claim until the UIM claim has been decided.[1] It is Hartford's position that, as a matter of law, a court must in every case try the bad faith claims at a later time following resolution of the UIM claims in order that a plaintiff, in trying the UIM claim, does not have the benefit of information within the insurance company's files relevant only to the bad faith claim. It is the position of plaintiff that a court may, and in this case should, try the bad faith claim immediately after the trial of the UIM claim and, thus, should at this time permit discovery relevant to both claims.

Both parties recognize that the scope of discovery will depend upon whether or not the court will bifurcate, and try at separate times, the UIM and bad faith claims.

---

[1]Prior to its issuance, this Opinion has been reviewed by Hon. Eugene B. Strassburger, III, Administrative Judge of the Civil Division of this Court.

1

NO. GD07-002888

There is almost no Pennsylvania case law on this issue because through regulations of the Pennsylvania Insurance Department, all insurance policies were required to provide for a mandatory binding arbitration of UM and UIM coverage disputes.[2]  In December 2005, in what is commonly referred to as the *Koken* case (*Ins. Federation of Pennsylvania, Inc. v. Department of Ins.*, 889 A.2d 550), the Pennsylvania Supreme Court ruled that the Insurance Department did not have authority to require mandatory binding arbitration for UM and UIM claims.

Insurance policies containing the mandatory arbitration provisions are being phased out and replaced with policies that do not mandate arbitration.  Consequently, the trial courts of Pennsylvania will begin to frequently encounter complaints which raise both UIM and bad faith claims.

The relevant facts in the present case are as follows:  Plaintiff was involved in a motor vehicle accident while operating a vehicle insured under a Hartford policy which provides UIM coverage of $100,000 to plaintiff.  The other driver's vehicle was insured by a policy issued by another insurance company which provided coverage of $100,000.  On September 24, 2003, plaintiff sued the other driver.  In April 2005, plaintiff settled her

---

[2]The only Pennsylvania state court cases addressing the issue of whether to stay bad faith claims of which I am aware are (1) *Yohe v. Nationwide Mutual Life Ins. Co.*, 7 D.&C.4th 300 (York 1990), where Judge Cassimatis rejected the insurance company's claim that it is entitled to have the plaintiff's breach of contract (fire loss) and bad faith claims severed as a matter of law, stating that these claims are so closely related that judicial economy dictates that the two be heard in the same setting, (2) *Mueller v. Nationwide Mutual Ins. Co.*, 144 P.L.J. 395, 31 D.&C.4th 23 (1996), where I briefly considered the issue; and (3) *National Grange Mutual Fire Ins. Co. v. Walsh*, 77 D&C4th 368 (Lackawanna 2005), where Judge Minora denied the insurance company's request to sever and stay the insured's counterclaim raising breach of contract and bad faith claims from the declaratory judgment action which the insured filed because the declaratory judgment action and the counterclaim all stem from the same operative facts so the holding of two trials would be a waste of the court's resources.

claim against this driver for $88,000. Plaintiff recognizes that under Pennsylvania law, any UIM benefits to which plaintiff is entitled will be offset by the $100,000 limits.

Hartford offered $30,000 to settle the UIM claim. Plaintiff rejected the offer. Thereafter, plaintiff instituted the present action. The complaint alleges that Hartford breached its contract of insurance in failing to pay plaintiff's claim for UIM benefits of $100,000 and also acted in bad faith by failing to properly investigate and/or offer a reasonable payment of plaintiff's underinsured motorist claim. Plaintiff's complaint includes a demand for a jury trial.

Hartford's motion for a protective order staying discovery relating only to the bad faith claim is accompanied with a motion to sever and stay all proceedings as to plaintiff's bad faith claim until the UIM claim is resolved. Obviously, plaintiff's bad faith claim will be severed because plaintiff's UIM claim will be resolved through a jury trial while bad faith claims are tried nonjury. *Mishoe v. Erie Ins. Co.*, 824 A.2d 1153 (Pa. 2003). The dispute between the parties is over whether to stay all proceedings as to the bad faith claim pending resolution of the UIM claim. It is plaintiff's position that the bad faith claim should not be stayed; instead, the trial judge presiding over the jury trial should try the bad faith claim immediately after the trial of the UIM claim (in which case pretrial discovery must include the bad faith claim). It is Hartford's position that the bad faith claims should be tried by a judge at a later date (in which case discovery will be limited to the UIM claim until this claim is resolved).

According to the Summary of Facts set forth in Plaintiff's Brief in Opposition to Defendant's Motion to Sever and Stay Plaintiff's Bad Faith Claim, the accident occurred when the other driver failed to yield to plaintiff's right-of-way. Because of the accident, plaintiff was unable to return to work. According to the Report of Plaintiff's Expert

3

NO. GD07-002888

Witness in Matters of Employability, Lost Earnings, and Diminished Earning Capacity, plaintiff's total lost earnings, past and future, and other reduced benefits exceed $400,000.

In its Reply Brief, Hartford states that the "primary issue is the alleged injuries sustained by the plaintiff in the motor vehicle accident, and her claim for lost earnings" (p. 4). Hartford's defense to both claims appears to be that plaintiff has overvalued her claim and that plaintiff has failed to furnish updated medical records that Hartford requires to fully assess plaintiff's claim.

Rule 213(b) allows the court, "in furtherance of convenience or to avoid prejudice," to order separate trials of any cause of action.[3]

In most instances, it will be more convenient for the parties and the court if the same judge who presided over the UIM jury trial tries the bad faith claim immediately after the completion of the UIM trial. Usually, the merits of the bad faith claim depend, at least to some extent, on whether the insurance company offered credible evidence to justify its decision to deny UIM benefits (or to pay less than the policy limits). The judge who presided over the jury trial is in a far better position than a judge who did not hear the case to evaluate this evidence. Furthermore, he or she is in the best position to do so immediately after hearing the evidence.

In the present case, for example, the controlling issue for the bad faith claim is likely to be whether Hartford had a basis for offering less than the policy limits. The resolution of this issue is likely to depend upon a judge's assessment of the evidence offered to the jury in the UIM proceedings. Obviously, the judge in the best position to

---

[3]Also, under Pa.R.C.P. No. 4012(a), the court, upon motion of a party and for good cause shown, may make any order regarding discovery which justice requires to protect a party from unreasonable prejudice.

4

assess the evidence presented in the UIM proceedings is the trial judge who presided over the proceeding. The best time for assessing the evidence is through a nonjury trial conducted immediately after the jury trial of the UIM claim.

If the bad faith claim is tried by the same judge at a later date, after completion of discovery on the bad faith issue, he or she may require a transcript to refresh his or her memory and will be a less effective trier of fact than if the bad faith claim had been tried immediately after the trial of the UIM claim. If the bad faith claim is heard by another judge, either much of the same testimony presented in the UIM claim will be presented again or, with the agreement of the parties, this new judge will assess the quality of the evidence presented in the prior proceeding by reading the transcript of the UIM trial.

At least in the situation presented in this case in which the insurance company rejected the insured's UIM claim on the ground that the insured is not likely to establish damages and/or liability to support her demand, a trial of the bad faith claim held immediately after the trial of the UIM claim is likely to be the most efficient and fairest method of resolving the UIM claim because it avoids duplicate testimony and permits the judge to make his or her decision when the judge best recollects the relevant evidence. Thus, a court is likely to proceed in this fashion unless a party (usually the insurance company) can establish that it will be unreasonably prejudiced if the claims are heard back-to-back.

Hartford contends that discovery that applies only to the bad faith claim will be extensive. Thus, it is a waste of the parties' time and resources to prepare the bad faith claim for trial until the UIM claim is resolved.[4] However, in the present case, it appears

---

[4]An insured's success on a UIM claim is not a prerequisite to success on a bad faith claim. *Nealy v. State Farm Mutual Automobile Ins. Co.*, 695 A.2d 790, 793 (Pa. Super. 1997)

NO. GD07-002888

that plaintiff's bad faith claim is case-specific (as opposed to a claim that is based primarily on insurance practices).   Plaintiff's bad faith claim appears to be based primarily on the evidentiary information in Hartford's files which is discoverable in Pennsylvania and will be furnished for the UIM trial.   Furthermore, Hartford never explains why extensive resources would be expended unnecessarily in preparing for trial of the bad faith claim at this time.

Hartford contends that through discovery involving only the bad faith claim, it will be required to give up its attorney-client privilege. This is incorrect. In *Mueller v. Nationwide Mutual Insurance Co.*, 144 P.L.J. 395, 31 D.&C.4th 23 (1996), I rejected the position of the insured that an insurance company has waived the privilege whenever it alleges that it handled a claim in good faith. I stated that the privilege is waived only in instances in which the insurance company contends that it was influenced by the advice of counsel. In that instance, communications between the client and counsel are waived because a party is not permitted to use the attorney-client privilege as a sword and as a shield.   Consequently, *Mueller* holds that documents in the files of an insurance company are protected when an insurance carrier raising the attorney-client privilege in bad faith claims states that the insurance company will not be contending that advice of counsel was a factor that influenced the manner in which it handled the insured's claims. 31 D.&C.4th at 32-33.   Also see *McAndrew v. Donegal Mutual Insurance Co.*, 56 D.&C.4th 1 (Lackawanna 2002 (Nealon, J.)).

Hartford correctly states that if I permit discovery relevant only to the bad faith claim before resolution of the UIM claim, plaintiff will obtain the trial preparation material,

(citations omitted) ("Rather, §8371 provides an independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim); and *March v. Paradise Mutual Ins. Co.*, 646 A.2d 1254, 1256 (Pa. Super. 1994).

6

NO. GD07-002888

if any, in Hartford's files protected by Pa.R.C.P. No. 4003.3.[5]    However, under
Pennsylvania's Rules of Discovery, the only trial preparation material that is protected
with respect to a party's representative other than a party's attorney is the
representative's "mental impressions, conclusions or opinions respecting the value or
merit of a claim or defense or respecting strategy or tactics."  Except for purposes of
settlement, these materials protected by Rule 4003.3 will usually be of limited use to the
insured in preparing for and presenting his or her UIM claim.

In *Bowser v. Ryder Truck Rental, Inc.*, 141 P.L.J. 316, 319-20 (1993), I discussed
the scope of Rule 4003.3's protections:

> An investigation can consist of (1) factual observations, (2) mental
> impressions, conclusions and opinions as to the material facts based on
> the factual observations, and (3) mental impressions, conclusions and
> opinions concerning the value or merits of a claim that are based on an
> analysis of the factual observations and the mental impressions,
> conclusions and opinions as to the material facts.    Only the third
> category is protected.  This means, for example, that only the final
> sentence of the following report would be protected:

>> The light snow and freezing rain condition was occurring at
>> the time of the accident so it would not have been possible for
>> the contractor to have had the area spotlessly clean at the time
>> of the accident.  Consequently, I think we have a very weak
>> claim against the contractor.

I relied on *Tate v. Philadelphia Savings Fund Society*, 1 D.&C.4th 131
(Philadelphia 1987), where Judge Avellino ordered the production of the portion of the
investigator's report which described the steps upon which plaintiff fell as a "safety
hazard."  He rejected defendant's position that this description was protected from
discovery because it was an expression of opinion.

---

[5]Trial preparation material of Hartford's trial counsel protected by Rule 4003.3 will not be
obtained in discovery relating to the bad faith claim because a bad faith claim is based on
information known to the insurance company.

7

NO. GD07-002888

The question, instead, is whether the opinion expressed can be reasonably interpreted as falling within one or more of the protected categories specified by rule 4003.3. We think not. The opinion expressed, "safety hazard," is part of the description of the steps and the description is simply that and nothing more. It does not pretend to be, nor is it, a communication respecting "value," merit," "strategy" or "tactics." 1 D.&C.4th at 141-42.

In *Bowser*, I summarized the scope of Rule 4003.3's protections as follows: Any mental impression, conclusion, or opinion which has evidentiary value or which could assist the party in the preparation or trial of the case is probably discoverable. The only mental impressions, conclusions, and opinions which are protected are those that would be of no interest to the party seeking discovery other than to assist that party in determining the other party's assessment of a particular claim or defense. 141 P.L.J. at 320.

Furthermore, information concerning Hartford's assessment of the claim may have been furnished to the plaintiff through settlement discussions in which the insurance company describes its reasons for its decision not to pay the full amount of UIM benefits. In addition, under the Unfair Insurance Practices Act (40 P.S. §1171.5(a)(10)(xiv)), an insurance company is obligated to provide a reasonable explanation for its actions:

(10) Any of the following acts if committed or performed with such frequency as to indicate a business practice shall constitute unfair claim settlement or compromise practices.

. . .

(xiv) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

8

NO. GD07-002888

In the present case, Hartford has not stated that its files contain any information protected by Rule 4003.3, let alone describe how discovery of this information at this time would significantly assist plaintiff in the preparation and trial of her UIM claim. While Hartford apparently contends that prejudice should be presumed, for the reasons set forth in my *Bowser* opinion, discovery of information protected by Rule 4003.3 is unlikely to substantially assist plaintiff in pursuing her UIM claim.

I recognize that there may be information in Hartford's files concerning settlement that should not be furnished until resolution of the UIM claim. For example, an insurance file may include a statement that "The plaintiff's lawyer does not like to try cases so you have only $30,000 to settle prior to trial. But at the call of the list you may go to $40,000, but only if the plaintiff first offers to settle for that amount--do not ever ask me for more than $40,000."

Where such information is in its files, the insurance company may file a focused motion for a protective order that only addresses this portion of the file.[6] The appropriate relief may be a court order maintaining the back-to-back trials with the document describing settlement strategies being furnished to the plaintiff only after the trial of the UIM claims.

Also, my denial of Hartford's motion to bar all discovery relevant only to the bad faith claim until resolution of the UIM claim does not mean that Hartford cannot raise objections to specific discovery requests that focus on general insurance practices rather than on the facts of the particular claim if (i) compliance with these discovery requests would be unreasonably burdensome and (ii) these discovery requests may be

---

[6]Loss reserve information need not be furnished by the insurance company without a court order compelling the insurance company to produce such discovery. *Fretz v. Mutual Benefit Co.*, 147 P.L.J. 7 (1998), 37 D.&C.4th 173. Also see *PECO Energy Co. v. Ins. Co. of North America*, 852 A.2d 1230 (Pa. Super. 2004).

moot if the UIM claim is resolved in the insurance company's favor.  In this instance, a court may decide to give the plaintiff the choice of a court order for back-to-back trials without this discovery or a court order staying the bad faith action pending resolution of the UIM claim.

There is substantial case law from other jurisdictions addressing the issue of whether a bad faith claim should be stayed pending resolution of the UIM claim.  In these other jurisdictions, there is a right to a jury trial for both the UIM and bad faith claims.  Almost all cases addressing this issue require bifurcation.  However, the case law is divided on the issue of whether to stay the bad faith action pending resolution of the breach of contract claim.[7]

In deciding whether to stay the bad faith proceedings, the critical issue for the courts of other jurisdictions is usually whether discovery of the insurance company's work product, protected by the relevant discovery rules, will result in prejudice to the insurance company.   However, the protection afforded work product in other jurisdictions is much broader.  See Federal Rule of Civil Procedure 26(b)(3) which provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."[8]

---

[7]According to Stephen S. Ashley, *Bad Faith Actions, Liability & Damages*, §10.41 (updated October 2007), few states require abatement if the insurer seeks to stay trial of the bad faith claim pending resolution of the contract cause of action while most courts hold that bifurcation lies within the discretion of the trial court.  But see *Couch on Insurance 3d*, §246:7 (2002) (While some authority does not require discovery to be delayed on a bad faith claim until other claims are resolved, the bulk of authority appears to be to the contrary.).

[8]Most states afford the same protection to trial preparation material.  Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine* 800 (5th ed. 2007).

Thus, the issue which courts of other jurisdictions address is whether the insurance company will be prejudiced by furnishing reports that have evidentiary value such as summaries of interviews with witnesses, reports of investigators hired by the insurance company, etc. In Pennsylvania, these reports are discoverable for the UIM claim. Consequently, rulings in other jurisdictions which stay proceedings in order to preserve the work product protection afforded trial preparation materials do not apply to Pennsylvania.

## SUMMARY

Under Rule 213, a court on its own motion may consolidate, bifurcate, and stay any claims. Nothing in this Opinion is intended to limit the discretion of the trial court, on its own motion, to make rulings under Rule 213 in lawsuits involving UIM and bad faith claims.

When a party seeks to bifurcate and stay discovery involving a bad faith claim until resolution of the UIM claim, this party has the burden of showing actual prejudice that outweighs the benefits that ordinarily flow from having the judge who presided over the UIM claim trial try the bad faith claim immediately after the trial of the UIM claim.

The motion of a party seeking a stay of the bad faith claims must contain material facts constituting grounds for the relief sought. Pa.R.C.P. No. 208.2(a)(3). Once a party has shown actual prejudice, the court must balance the relevant factors in deciding how the case shall proceed.

In responding to an insurance company's showing that it will be prejudiced by a court order allowing discovery relevant only to the bad faith claim before the UIM claim is tried, a court has options other than continuing a trial of the UIM claim. These include

NO. GD07-002888

(1) restricting the scope of discovery because of the back-to-back trials and (2) providing for compliance with specific discovery requests immediately after the trial of the UIM claim.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

BARBARA J. GUNN,

           Plaintiff

    vs.

THE AUTOMOBILE INSURANCE
COMPANY OF HARTFORD,
CONNECTICUT,

          Defendant

NO. GD07-002888

## ORDER OF COURT

On this ___25___ day of July, 2008, it is hereby ORDERED that defendant's motions to preclude discovery pertaining only to the bad faith claim while the UIM claim is pending and to stay all proceedings as to the bad faith claim until resolution of the UIM claim are denied.

BY THE COURT:

_____

WETTICK, J.

*Copies mailed. (AR) 7/25/08*

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CYNTHIA COLLINS,

    Plaintiff,

vs.

CARA L. ZIELER and STATE
FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

    Defendants.

CIVIL DIVISION

Case No.: G.D. 08-014817

Code: 001

**BRIEF IN OPPOSITION TO
DEFENDANT'S PRELIMINARY
OBJECTIONS**

Filed on behalf of the Plaintiff,
CYNTHIA COLLINS

Counsel of Record for this Party:

Joshua P. Geist, Esquire
Pa. I.D. #85745
GOODRICH & GOODRICH, P.C.
Suite 900 - Law & Finance Building
429 Fourth Avenue
Pittsburgh, PA 15219
josh@goodlazlaw.com

(412) 281-1455

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

CYNTHIA COLLINS,                        )
                                        )    No.: G.D. 08-014817
          Plaintiff,                    )
                                        )
                                        )
vs.                                     )
                                        )
CARA L. ZIELER and STATE                )
FARM MUTUAL AUTOMOBILE                  )
INSURANCE COMPANY,                      )
                                        )
          Defendants.                   )

## BRIEF IN OPPOSITION TO DEFENDANT'S PRELIMINARY OBJECTIONS

AND NOW, comes the Plaintiff, Cynthia Collins, by and through her attorneys, Goodrich & Goodrich, P.C. and Joshua P. Geist, Esq. and files the within Brief in Opposition to Defendant's Preliminary Objections:

## FACTUAL BACKGROUND

On January 26, 2008, Plaintiff, Cynthia Collins, was a front seat passenger in a vehicle operated by Defendant, Cara L. Zieler. (Complaint, ¶7). While Zeiler was attempting to exit from I-79 at the Kirwan Heights exit ramp, she lost control of the vehicle, causing the vehicle to roll approximately five (5) times. (Complaint, ¶8).

At the time of the accident, Zeiler was operating her vehicle under the influence of alcohol with a blood alcohol content of 0.24. (Complaint, ¶9). As a result of the accident, Cynthia Collins suffered a concussion and traumatic brain injury. (Complaint, ¶10).

2

At the time of the accident, Zeiler was insured under a policy of insurance issued by Allstate with liability limits of $100,000. (Complaint, ¶21). Cynthia Collins was insured by State Farm with Underinsured Motorist (UIM) limits of $100,000. (Complaint, ¶18, 25).

The State Farm policy issued to Collins provides that an insured must file a lawsuit against State Farm, the owner and driver of the underinsured motor vehicle and any other parties who may be legally liable for the insured's damages. (Complaint, ¶20).

Plaintiff filed the within Complaint against Zeiler, the owner and operator of the vehicle, and State Farm for UIM benefits. Plaintiff's allegations against Zeiler are based on negligence, including:

- disregarding traffic lanes (75 Pa.C.S.A. §3309);

- driving at an unsafe speed (75 Pa.C.S.A. §3361);

- careless driving (75 Pa.C.S.A. §3714);

- reckless driving (75 Pa.C.S.A. §3736); and

- driving under the influence of alcohol (75 Pa.C.S.A. §3802).

Plaintiff's claims against State Farm are contractual in nature and are for the UIM benefits available under the policy.

## ARGUMENT

Zieler has filed the within Preliminary Objections to Plaintiff's Complaint, arguing that the action against State Farm should be stricken, or in the alternative, severed. Additionally, Zieler argues that she should not be subject to punitive damages for operating her vehicle while under the influence of alcohol with a blood alcohol content of 0.24.

### I.     The Claims Arise Out of the Same Transaction or Occurrence and Must Remain Together.

Plaintiff's claims against Zieler and State Farm involve common questions of fact and arise from the same transaction or occurrence.

Pennsylvania Rule of Civil Procedure 2229 provides in relevant part:

**Rule 2229. Permissive Joinder**
(b)  A plaintiff may join as defendants persons against whom the plaintiff asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons arise in the action.

Here, Plaintiff has joined as defendants persons against whom the plaintiff asserts a right to relief (jointly, separately or in the alternative) that arise from the exact same motor vehicle accident.

The plaintiff's claims against Defendant Zieler arise and result directly from the auto accident of January 26, 2008. The plaintiff's claims against State Farm arise and result directly from the auto accident of January 26, 2008 as well.

4

Similarly, Defendant Zieler's responsibility rests upon Zieler's liability for the subject accident and for the damages she caused to Collins as a result of the accident.    Likewise, Defendant State Farm's responsibility rests upon Zieler's liability for the subject accident and for the damages Zieler caused to Collins as a result of the accident.

Although the law classifies the technical legal theories of the claims against Zieler sounding in tort and against State Farm sounding in contract, the plaintiff's claims against both defendants arise and result directly from the same January 26, 2008 auto accident occurrence. Thus, although the legal theory of liability applied against the defendants differ from tort to contract, the factual underpinnings of the underlying auto accident which gives rise to both defendants' liability and responsibility for damages is the same.

Further, the plaintiff's cause of action against both defendants involves:

- the same operative facts of the accident;

- the same driver fault that plaintiff must establish in order to recover against both Zieler and State Farm;

- the same police officers;

- the same eyewitnesses;

- the same plaintiff's damages;

- the same plaintiff's proof of damages;

- the same plaintiff's medical care providers;

- the same expert testimony;

- the same injuries;

5

- the same accident causation issues;

- the same injury causation issues; and

- the same injured party.

The "net result" is that the plaintiff's claims against Defendant Zieler arise from the same transaction or occurrence as the plaintiff's claims against Defendant State Farm.

Further, the State Farm policy requires that the plaintiff file suit directly against State Farm *and* the operator *and* the owner of the vehicle. Thus, the plaintiff is obligated to bring her action against both Defendant Zieler and Defendant State Farm. Otherwise, State Farm may argue that Collins failed to comply with the terms of the policy and refuse to provide coverage.

Although no Pennsylvania courts have addressed this exact issue, courts of other jurisdictions have held that a plaintiff may bring suit against the tortfeasor and UIM carrier. The New Jersey Superior Court held that:

> The insured's legal entitlement to damages for the underinsured driver's negligence imports into the underinsured motorist policy all of the normal rules governing tort liability and damages.
>
> An insured victim's recovery is, to a greater or lesser extent, a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance. The only difference is that in the case of underinsurance the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit. Everything else is the same, including the necessity of finding fault on the part of the underinsured driver.

Krohn v. New Jersey Full Insurance Underwriters Assn., 720 A.2d 640 (N.J. Super. 1998).



Recently, the Pennsylvania Superior Court acknowledged that third party claims and UIM claims are similar. <u>Condio v. Erie</u>, 899 A.2d 1136 (Pa. Super. 2006). In <u>Condio</u>, the court held that "U claims are also like 3rd party claims in the practical sense of the presentation of the issues and positions that can arise in the claim…" <u>Id</u>.

Thus, even though the UIM insurer is a defendant based on contract, the claim against the UIM insurer is effectively a 3rd party claim.

From a practical standpoint, the joinder of the 3rd party and UIM claims promotes judicial economy and eliminates the need for two separate jury trials. Further, combining the 3rd party and UIM cases in the same proceeding would:

- Avoid issues of collateral estoppel and res judicata since all issues pertaining to plaintiff's claims are tried at once and in one unified proceeding;

- Avoid delay;

- Combine discovery and save costs and time through unified discovery;

- Allow for a uniform fact presentation;

- Allow experts to be presented one time in one unified proceeding, thus saving time, effort and expense; and

- Avoid inconsistent verdicts since all causes against all responsible parties will be tried in a single unified proceeding.

Zieler argues that she will be prejudiced by the fact that insurance is within the caption as State Farm is a named defendant and that the limits of Zieler's insurance policy may be offered at trial.

While Zieler is correct that the limits of her policy issued by Allstate have been pled in the Complaint, there is no requirement that those limits will be required to be heard by a jury. The only reason for the pleading of Zieler's limits was in order to set forth a viable claim against State Farm for UIM benefits within the Complaint. It is likely that a ruling by the trial judge will be made prior to trial that will address the admissibility of insurance and/or insurance limits. Further, State Farm will likely concede that Zieler's liability limits are $100,000, thereby eliminating that issue at trial.

Zieler is incorrect that the fact that State Farm is in the caption is prejudicial. The Pennsylvania Rules of Evidence only preclude the admission of liability insurance. Here, there is no direct link between State Farm and the existence of Zieler's liability insurance. Further, as with any issue involving the word "insurance," the trial judge can make rulings specific to the case prior to and during trial. The issue is not ripe for decision on Preliminary Objections.

Again, although no Pennsylvania courts have directly addressed this issue, court from other states have consistently held that jurors must know the name of all parties, including insurance companies. *See* Bardis v. First Trenton Ins. Co., 936 A.2d 476 (N.J. Super. 2007) (There is no blanket rule that bars reference to the insurance carrier as a party); Lamz v. GEICO, 803 So.2d 593 (Fla. 2001) (UIM insurer should have been properly identified to the jury during voir dire); Earl v. Cobb, 156 S.W.3d 257 (Ky. 2005) (UIM insurer should have been identified to the jury); King v. State Farm, 850 A.2d 428 (Md. App. 2004) (rule prohibiting evidence that a person was or was not insured against liability did not apply in suit against auto insurer to recover UIM benefits).

8

As Plaintiff's claims against Zieler and State Farm involve common questions of fact and arise from the same transaction or occurrence, Plaintiff is permitted to join the claims. Further, Zieler has failed to provide any evidence that she will be prejudiced by the inclusion of State Farm in the within action. Any prejudicial issues that may arise can be resolved prior to and during trial by the trial judge. Therefore, Zieler's Preliminary Objections should be overruled.

## II. Defendant Should be Subject to Punitive Damages While Operating Her Vehicle Under the Influence of Alcohol.

Zieler also argues that she should not be subject to the imposition of punitive damages because the mere fact that she was operating her vehicle while under the influence of alcohol does not warrant punitive damages. When read as a whole, Plaintiff's Complaint sets forth facts that could lead a jury to impose punitive damages.

"Punitive damages" are damages other than compensatory or nominal damages awarded against a person to punish him for his outrageous conduct. Chambers v. Montgomery, 192 A.2d 355 (Pa. 1963). "Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others." Chambers, id.

In Focht v. Rabada, the Pennsylvania Superior Court addressed the issue of whether driving while under the influence of intoxicating liquors may, even in the absence of bad motive, in certain circumstances, constitute such reckless indifference to the interests of others to warrant the award of punitive damages. Focht v. Rabada, 268 A.2d 157, 159 (1970).

9

The Superior Court held as follows:

> Nonetheless, we believe that driving under the influence of intoxicating liquor with its very great potential for harm and serious injury may under certain circumstances be deemed 'outrageous conduct' and 'a reckless indifference to the interests of others' sufficient to allow the imposition of punitive damages.

Focht, id. at 160.

In particular, the court noted:

> Automobiles represent the most lethal and deadly weapons today entrusted to our citizenry. When automobiles are driven by intoxicated drivers, the possibility for death and serious injury increases substantially. Every licensed driver is aware that driving while under the influence of intoxicating liquor presents a significant and very real danger to others in the area.

Focht, id. at 161. In fact, the court held that an intentional assault with fists may, in certain instances, constitute action less outrageous than attempting to drive while under the influence of intoxicating liquor. Id. The Focht court further noted:

> While we are not considering the actual factual circumstances in this case, it would appear clear to us that an intoxicated driver, proceeding at an excessive speed down a crowded thoroughfare where there are many pedestrians would clearly be liable for punitive damages. Note should also be taken of the statistical analyses prepared each year by the Bureau of Traffic Safety in Pennsylvania which reflect the very high percentage of fatalities and other injuries which may be directly attributed to drivers who are under the influence of intoxicating liquors.
> Id.

Here, the plaintiff has sufficiently pled facts that would warrant punitive damages. **First,** Zieler's blood alcohol content (BAC) was 3 times the legal limit: 0.24 at the time of the collision. Clearly, operating a vehicle while 3 times the legal limit is outrageous conduct and done with reckless indifference to the interests of others. **Second,** the plaintiff alleges that Zieler violated the following sections of the motor vehicle code while operating her vehicle:

- driving at an unsafe speed (75 Pa.C.S.A. §3361);

- careless driving (75 Pa.C.S.A. §3714); and

- reckless driving (75 Pa.C.S.A. §3736).

When these violations of the motor vehicle code are taken together with the fact that Zieler was operating her vehicle with a BAC of 0.24, it should be obvious that her conduct rises to the level that would warrant punitive damages.

**Third,** the plaintiff alleges that the accident occurred as Zieler was attempting to exit an interstate and as she lost control of her vehicle, she caused the vehicle to roll approximately 5 times. The circumstances of the accident, in particular, Zieler's complete lack of control of her vehicle, is further evidence that would warrant punitive damages.

Plaintiff has clearly alleged sufficient facts to justify the award of punitive damages. Therefore, Zieler's preliminary objections should be overruled.

RESPECTFULLY SUBMITTED:

GOODRICH & GOODRICH, P.C.

Joshua P. Geist, Esq.
Attorney for Plaintiff

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been furnished this _9th_ day of

October, 2008 by U.S. Mail, First Class, postage pre-paid to the following:

R. Sean O'Connell
Robb Leonard Mulvihill, LLP
One Mellon Center
500 Grant Street, 23rd Floor
Pittsburgh, PA 15219

The Honorable Paul F. Lutty, Jr.
814 City-County Building
414 Grant Street
Pittsburgh, PA 15219

GOODRICH & GOODRICH, P.C.

Joshua P. Geist, Esquire
Attorney for Plaintiff

13

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
CIVIL DIVISION

CYNTHIA COLLINS,                     )
                                     )    No.:  G.D. 08-014817
    Plaintiff,                   )
                                     )
vs.                                  )
                                     )
CARA L. ZIELER and STATE             )
FARM MUTUAL AUTOMOBILE               )
INSURANCE COMPANY,                   )
                                     )
    Defendants.                  )

## ORDER OF COURT

AND NOW, this _22d_ day of _Oct_____, 2008, Defendant Zieler's

Preliminary Objections are OVERRULED, _without prej to ∆'s right_

_to raise mot. to sever at a later date, + w/o prej to_

_raise issue of pun. damages._

BY THE COURT:

_____ J.

Judge Betty Strassburger

13

IN THE COURT OF COMMON PLEAS OF    MARY F. RINALDI
LACKAWANNA COUNTY, PENNSYLVANIA   LACKAWANNA COUNTY

KIMBERLY MOYER, and            :
CHARLES MOYER, her husband,    :
                               :          2008 AUG 13 P 12: 33
         Plaintiff,            :
                               :           CLERK OF JUDICIAL
                               :           RECORDS CIVIL DIVISION
         vs.                   :   No. 1684 - 2008
                               :
JOSEPH HARRIGAN, and           :
ERIE INSURANCE EXCHANGE,       :
                               :
         Defendants.           :
                               :

: : : : : : : : : : : : : : : : : : : :

## PLAINTIFFS' BRIEF IN OPPOSITION
## TO DEFENDANT HARRIGAN'S PRELIMINARY OBJECTIONS

### I. STATEMENT OF FACTS

On January 31, 2007, defendant Joseph Harrigan drove drunk and caused a serious accident.

Defendant Joseph Harrigan then fled the scene of the accident he had caused.

At the time of the same January 31, 2007 accident, Plaintiffs were also insured by Erie Insurance Exchange for Underinsured Motorist benefits that applied to them arising from and as a result of that same accident.

### II. PROCEDURAL POSTURE

Plaintiffs have filed an Amended Complaint. The Amended Complaint includes the claims against defendant Harrigan that arise and result from the accident of January 31, 2007.

Page -1-

That Amended Complaint includes the claims against defendant Erie Insurance that arise and result from the accident of January 31, 2007.

Defendant Harrigan filed Preliminary Objections seeking to separate the claims from this single accident into multiple and divergent proceedings in different counties.

## III. ISSUE

Defendant Harrigan's Preliminary Objections concern, in primary and determinative fashion, the issue of Plaintiffs' joining their claims against the tortfeasor and UIM insurer in the same case.

Defendant raises as a consequential matter the issue of venue if plaintiffs' claims against the defendants were severed into multiple proceedings in different counties.

## IV. ARGUMENT

### Part A

### Plaintiffs' Claims Against Defendants Are Properly Joined

Defendant Harrigan's Preliminary Objections are premised on defendant's theory of "misjoinder" of the defendants under Rule 2229. Defendant's assertion of "misjoinder" is in error because the plaintiffs' claims against defendant Erie involve common

questions of fact and arise from the same transaction or
occurrence as the plaintiffs' claims against defendant Harrigan.

Pennsylvania Rule of Civil Procedure 2229 provides in
relevant part as follows:

> **"Rule 2229. Permissive Joinder**
> *(b) A plaintiff may join as defendants persons against*
> *whom the plaintiff asserts any right to relief jointly,*
> *severally, separately or in the alternative, in respect*
> *of or arising out of the same transaction, occurrence,*
> *or series of transactions or occurrences if any common*
> *question of law or fact affecting the liabilities of*
> *all such persons arise in the action."*

Instantly, the plaintiffs have joined as defendants persons
against whom the plaintiffs assert a right to relief (jointly,
separately or in the alternative) that arise from the exact same
motor vehicle accident occurrence.

The plaintiffs' claims against defendant Harrigan arise and
result directly from the auto accident of January 31, 2007.

The plaintiffs' claims against defendant Erie Insurance
Exchange arise and result directly from the auto accident of
January 31, 2007 as well.

Similarly, Defendant Harrigan's responsibility rests upon
Harrigan's liability for the subject accident and for the damages
Harrigan caused to the Moyers as a result of the subject
accident.

Likewise, Defendant Erie's responsibility rests upon Harrigan's liability for the subject accident and for the damages Harrigan caused to the Moyers as a result of the subject accident.

Although the law classifies the technical legal theories of the claims against defendant Harrigan as sounding in tort and against Erie sounding in contract, the plaintiffs' claims against both defendants arise and result directly from the same January 31, 2007 auto accident occurrence.

Thus, although the legal theory of liability applied as against the defendants differ from tort to contract, the factual underpinnings of the underlying auto accident occurrence which gives rise to both defendants' liability and responsibility for damages is the same.

More specifically, not only is the actual underlying accident occurrence the same, but the plaintiffs' cause against both defendants also involves:

- the same operative facts of the accident;

- the same driver fault that plaintiffs must establish in order to recover against defendant Harrigan is the same driver fault that plaintiffs must establish in order to recover against defendant Erie;

- the same police officers regarding the accident;

- the same eyewitnesses,

- the same plaintiffs' damages;

- the same plaintiffs' proofs of the damages

Page -4-

- the same plaintiff's medical care providers,

- the same expert testimony,

- the same injuries,

- the same accident causation issues,

- the same injury causation issues,

- the same injured parties,

The "net result" is that the plaintiffs' claims against defendant Erie involve common questions of fact and arise from the same transaction or occurrence as the plaintiffs' claims against defendant Harrigan.

A similar issue was just decided by Judge Minora of this Court in the mater of *Brady v Prislupski and Motorist Mutual Ins. Co.* (2005 CV 4223).

In *Brady*, the Court addressed defendant Motorist Mutual Insurance Company's 3rd Preliminary Objections to Plaintiff's 2nd Amended Complaint. One of defendant Motorist Mutual's Preliminary Objections in *Brady* was purported "misjoinder" of causes of action. The plaintiff in *Brady* had sued Motorist Mutual on both a contractual coverage claim and on a Bad Faith claim.

In passing on defendant's joinder objections, the *Brady* court held as follows:

> "*The case involves common issues of fact and law and a series or transactions all arising out of the underlying motor vehicle accident and underinsurance*

Page -5-

> coverage disputes. This makes their joinder proper
> under Pa.R.Civ.P. 1020, 2229 and Rule 1602.    There is a
> common defendant (Motorist Mutual) in both counts.
> There exists inter connected duties, insurance policy
> obligations and other commingled and inter connected
> transactions. Accordingly, these counts should be
> joined under Pa.R.Civ.P. 2229(b).[1]

As explained, *Brady* involved UIM benefits from an underlying motor vehicle accident and Bad Faith handling of those UIM benefits from an underlying motor vehicle accident.

Whereas the UIM portion of *Brady* involved the underlying accident and the damages causally stemming from that accident, the Bad Faith portion of *Brady* involved claims handling issues that were further removed and more attenuated from the accident occurrence.

Despite the above, the Court in *Brady* analyzed the underlying operative occurrences and properly determined that even Bad Faith handling of the UIM aspect of a motor vehicle accident still arose from a common occurrence and presented with common issues of law and fact.

The instant matter involves only UIM benefits from underlying motor vehicle accident and does not reach out to the

---

[1] Parenthetically, the Brady court also noted specifically that: "*in this case, there will be considerable areas of discovery that overlap with each count. To require duplicative written discovery, deposition discovery and trial would be uneconomical and delay expediting the resolution of these causes of actions.*"

UIM insurer's Bad Faith handling accident related UIM claim.

Thus, the plaintiffs' causes here in *Moyer* are even more specific and even more directly related to the underlying accident occurrence than the broader claims that were approved for joinder in *Brady*.

As the claims in *Moyer* are even more direct and more specific to the underlying common auto accident occurrence than was the joinder of claims permitted in *Brady*, the joinder of claims herein is appropriate.

Defendant Harrigan's objections to joinder of the plaintiff's claims which arise from the common underlying accident should be denied as a result.


## Part B

### The Only Material Difference vis-a-vis a Judgment in a Unified Action Against Both Defendants is the Payor of that Judgment

The similarities and interrelationships between the tortfeasor and UIM claims enumerated above are not merely fortuitous.

Rather, the myriad of commonalities and interrelationships demonstrate just how intertwined and interrelated the tortfeasor and the UIM claim are.

In fact, aside from the amount of the unified judgment that each defendant must pay, the plaintiffs' claims against the

Page -7-

tortfeasor and against the UIM insurer are the same.

It is for this reason that in the matter of *Krohn v New Jersey Full Insurance Underwriters Assn.* 316 N.J. Super. 477 720 A.2d 640, our sister state of New Jersey approved of the plaintiff-insured's suing both the tortfeasor and the UIM insurer in the same case. In approving a single suit against both the tortfeasor and the UIM insurer, the court reasoned as follows:

> "*The insured's legal entitlement to damages for the underinsured driver's negligence imports into the underinsured motorist policy all of the normal rules governing tort liability and damages.*
>
> *An insured victim's recovery is, to a greater or lesser extent, a substitute for that which would have been derived from a third-party suit but for the inadequacy of the tortfeasor's insurance. The only difference is that in the case of underinsurance the carrier is obligated to pay its insured up to the coverage limit less the tortfeasor's coverage limit. Everything else is the same, including the necessity of finding fault on the part of the underinsured driver*".

In sum, the commonality of the accident, the injuries, causation, damages, proofs, etc. demonstrate that the plaintiffs' claims against the tortfeasor and the UIM insurer are so intertwined that they are effectively the same claim - with the only difference being the payor of the damages.

Page  -8-

In *Condio v Erie Insurance Exchange*, 899 A.2d 1136 (Pa.
Super. 2006), the Pennsylvania Defense Institute argued and the
Pennsylvania Superior Court also held similarly.

The Pennsylvania Defense Institute in *Condio*[2] argued in
relevant part as follows:

> "*U-claims are hybrid claims that involve elements
> of both first party claims and third party claims.*"

> "*U-claims do have certain components found in 1st
> party claims. they are like first party claims in that
> the insured claimant is often making a direct claim
> against his own insurer .... U claims are also akin to
> first party claims insofar as the disclosure of
> policies and coverage terms are concerned. There is no
> argument·but that insurers are obligated to respond to
> requests for policy information and similar coverage
> information.*

> *Beyond those threshold connections and duties,
> however, when it turns to issues such as liability and
> damages, coverage or even procedure, U-claims become
> very much like third party claims.*

> *U claims are like 3rd party claims because the
> contract of insurance sets them up that way. the
> traditional insuring agreement contained in the UM/UIM
> section of the policy provides that the insurer agrees
> to pay to the insured the amount the insured would
> otherwise be legally entitled to recover from the owner
> or operator of an uninsured or underinsured motor
> vehicle. Under that insuring agreement, the amount of
> the benefits the insured is entitled to recover from
> the insurer is measured by the 3rd party tort recovery
> the insured would have been entitled to from the
> tortfeasor ...*"

> "*U-claims are also like 3rd party claims because
> the insured is naturally and inherently seeking to
> maximize his recovery of general damages, while the*

---

[2] *PDI Amicus Curiae Brief at 7-8 filed in Condio v Erie.*

> insurer seeks, within reasonable limits, to minimize
> that recovery.
>
>   U claims are also like 3rd party claims in the
> practical sense of the presentation of issues and
> positions that can arise in the claim ..."

Thus, as argued and explained in *Condio*, even though
the UIM insurer is a defendant based on contract, that claim
against the UIM insurer is effectively a 3rd party claim.

Additionally, the notion of joining a contract based claim
with a tort based claim is not at all novel. In fact, the joinder
of a contract claim defendant and a tort claim defendant is the
same action is already regularly found in law.

Matters including claims of respondeat superior against an
employer are unquestionably joined with the underlying tort claim
against the employee.

The claim against the tortfeasor employee arises in tort.
However, the action against the liable employer do not. The
claims against the non-actor employer arise only out of the
contract between employee tortfeasor and non-tortfeasor employer.

Despite the complete absence of any transgressing conduct by
the employer, the employer is absolutely a rightful and proper
party to the action based on another defendant's misconduct in
tort.

This is because the employer is liable for whatever damages
the plaintiff suffered in the same measure and on the same proofs

as is the defendant in tort employee. That the plaintiff has to
prove a contract separate from the underlying auto accident is
irrelevant to joinder.

In fact, the argument to join a UIM insurer is even stronger
than the argument to join a contract liable employer under
respondeat superior. In respondeat superior, the victim of the
employee tortfeasor's negligence has no contractual relationship
with the defendant employer. The injured person's respondeat
superior claim rests entirely on a contract between two other
people to which he is not even a party. In the UIM context, the
U-insured plaintiff has a direct contractual relationship and a
direct contractual claim against the U carrier.

Another example lies in the law of surety. A surety who will
ultimately be called to answer for the damages caused by another
is absolutely a rightful and proper party to the action that has
as it underlying basis a different defendant's actions. The
surety did not cause the underlying occurrence that caused the
loss. It is the actor-defendant who is the "in-fact" cause. The
surety, nonetheless, is answerable for the damages the plaintiff
sustained for which the plaintiff cannot find recompense from the
actor-defendant. Nonetheless, the surety is a proper party to the
action that determines the liability and damages assessed against
the underlying actor-defendant.

These examples highlight that the legal titles of trespass
and assumsit are legal classifications that face no prohibition

against joinder when, as here, both defendants are called to answer for the same damages, on the same proofs of loss caused by the same occurrence.

Defendant Harrigan's Preliminary Objections should be denied as a result.

Part C

### Joinder of Defendants Avoids Duplication

Although different legal theories that apply against the defendants as a result of the underlying auto accident, all of the operative facts that will be put to the jury involve and arise from that underlying auto accident.

Obviously, the defendants would like this auto accident to be tried as two cases because, in that instance, they can each cumulatively and duplicatively attack the plaintiff's claims.

However, were this 1 auto accident case split into 2 separate and divergent cases, the following would occur:

- 2 juries will need to be empaneled to hear **two trials,**

- A judge will have to preside over 2 almost exact trials regarding the same accident (or 2 judges would each have to preside over nearly identical trials)

- the same Police officers would be required to attend 2 trials regarding this 1 accident

- the same plaintiff's medical care providers would be burdened with 2 proceedings;

- the plaintiffs would be burdened with the costs of 2
  proceeding which would reduce substantially their rightful
  recompense;

- each trial will present the same eyewitnesses,

- each trial will present the same medical doctors,

- each trial will present the same expert testimony,

- each trial will involve the same injuries,

- each trial will involve the same causation issues,

- each trial will involve the same injured parties,

- each trial will have the same plaintiff's damages,

- each trial will have the same proofs of plaintiff's
  damages.

Thus, despite the exact of issues of operator liability,
injuries and testimony, defendant would have this court conduct
two of the same trials before two different juries.

The issue before this court is simply:

> "Does the court need such total duplication on its
> calendar, or could the interests of judicial
> economy best be served by keeping these cases
> together and proceeding as one lawsuit?"

Clearly, there is no interest in duplicative efforts.
Defense counsel's efforts in attempting to secure improper
benefit at the expense of the court, the public and other
litigants[3] does not warrant such unnecessary duplication.

---

[3] It should be noted that the attorneys for defendant Erie Insurance
Exchange have not filed Preliminary Objections to the combined resolution
of these similar issues in a singular proceeding.

Page -13-

Consequently, defendants' preliminary objections demanding 2 separate and duplicative trials should be dismissed as a result.


Part D

## Additional Considerations of Plaintiff's Proper Joinder

In addition to avoiding unnecessary multiple and duplicative trials, plaintiffs' proper combination of the 3rd party and UIM cases in the same proceeding would:

1) Avoid issues of collateral estoppel and res judicata since all issues pertaining to plaintiffs' claims are tried at once and in 1 unified proceeding;

2) Avoid delay;

3) Combine discovery and save costs and time through unified discovery;

4) Allow for a uniform fact presentation;

5) Allow experts to be presented 1 time in 1 unified proceeding, thus saving time, effort and expense; and

6) Avoid inconsistent verdicts since all causes against all responsible parties will be tried in a single unified proceeding.


Part E

## Coordination Of Cases Would Follow Severance Anyway

Defendant Harrigan seeks to have venue shifted to Bucks

County in the event that the plaintiffs' claims against the defendants were severed.

Defendant fails to account, however, for the Coordination of actions in different counties.

Pennsylvania Rule of Civil Procedure 213.1 was recently promulgated to address the Coordination of actions in different counties.

Pa.R.Civ.P. 213.1 provides in relevant part that when actions are pending in different counties that involve a common question of law or fact or which arise from the same transaction or occurrence, any party may request the court (in which the complaint was first filed) to order coordination of the actions.

The court, in that instance, would consider a number of factors, including:

    (1) whether the common question of fact or law is predominating and significant to the litigation;

    (2) the convenience of the parties, witnesses and counsel;

    (3) whether coordination will result in unreasonable delay or expenses to a party o otherwise prejudice a party in an action which would be subject to coordination;

    (4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

    (5) the disadvantages of duplicative and inconsistent ruling, orders or judgments;

    (6) the likelihood of settlement of the action without further litigation should coordination be denied.

Applying the criteria enumerated in the Rule, even if the claims against Harrigan were severed from the claims against Erie as a matter of joinder under Rule 2229, the claims against Harrigan would again be coordinated back into the Moyers' action against Erie that remained in Lackawanna County.

In sum, it would not be sensible to sever claims that stem from the same accident as a matter of joinder based on Rule 2229 when those same claims will be coordinated back into the same case that they were originally in under Rule 213.1

## V. REBUTTAL AND DISTINGUISHING DEFENDANT'S ARGUMENTS

### A

Defendant argues at page 2 (and repeats at page 3) of defendant's brief that "It is clear that their claims arise from an entirely different set of circumstances and involve vastly different determinations of facts and/or law."

As discussed above, this is incorrect as it is the underlying motor vehicle accident, an accident common to both defendants,  which will fix both defendant's liability and responsibility for damages.

Additionally, it is notable that the defendant cites in support of its assertion only that the legal theory against defendant Harrigan sounds in tort while the legal theory against defendant Erie sounds in contract. Defendant does not develop,

.explain or describe how the plaintiffs' claims against the defendants are in any other way different or divergent.

Significantly, defendant does not articulate how the accident occurrence, the injuries sustained and the consequential damages asserted by plaintiffs differ in any way in their assertion against either or both defendants.

B

Defendant cites *Kalker v Moyer* 921 A.2d 21 in support of defendant's contention of misjoinder. Defendant's citation to and reliace upon *Kalker* is misplaced, however.

The plaintiff in *Kalker* had brought an action in which he joined 2 entirely separate and distinct auto accidents.

Immediately, *Kalker* is entirely off point as *Moyer* involves only 1 accident and the damages that flow from that single event.

Obviously, 2 separate accidents are entirely 2 distinct and separate occurrences. The issues in *Kalker* of having to prove the occurrences of 2 distinct accidents, how they happened, who did what in each, who acted properly or improperly in each and then having to determine damages and then apportion damages between 2 distinct occurrences are absent in *Moyer*.

The *Kalker* decision is based of the misjoinder of 2 entirely separate, distinct and unrelated occurrences as is incorrectly cited as precedential with regard to the instant issue as a result.

Page -17-

C

Defendant argues that there would be confusion and prejudice by having to introduce evidence of Harrigan's liability insurance.

For example, at page 4 of its brief, defendant argues that "to join the actions against Harrigan and Erie would require the admission of the existence and possibly the amount of Harrigan's liability insurance."

Additionally, at page 5 of its brief defendant asserts that *"It is clear that with regard to an underinsured motorist claim that the carrier is entitled to a credit for whatever coverage the tortfeasor has. As such, plaintiff will need to prove the amount of that credit to prove that Erie undervalued plaintiffs' damages"*.

Defendant's argument is again incorrect.

Initially, the claim for Bad Faith was removed in the Amended Complaint. Accordingly, there is no element of plaintiff having to prove that Erie "undervalued plaintiffs' damages".

Additionally, plaintiffs' cause will be established based on liability and damages. The jury will have the evidence of the occurrence and will hear plaintiffs' proofs of damages. Neither of plaintiffs' proofs involve the introduction of defendant's insurance limits.

Accordingly, the jury will sit and render its verdict based

on evidence of liability and damages without mention, evidence or consideration of defendant's insurance coverage.

D

Defendant is inaccurate regarding evidence of insurance under PA law.

Defendant states that "evidence of insurance is irrelevant and prejudicial and justifies the grant of a mistrial".

Defendant also recites inapplicable out of context principles regarding evidence of insurance.

It is correct that a plaintiff cannot introduce evidence of liability insurance as to whether the defendant acted wrongfully.

However, the same Rule of Evidence in the next sentence then enumerates instances wherein evidence of liability insurance is admissible.

The result is defendant raised and argued on a premise of law that was inapplicable factually and irrelevant legally[4].

In sum, plaintiff's joinder of the claims based on the

_____

[4] The underlying purpose of defendant's objection is to separate defendant Harrigan from a defendant whom it believes a jury may perceive as a "deep pocket".

Plaintiff posits that an insurer which is named as a party in a case is no different than having any other perceived "deep pocket" defendant in the case. There is no more legal basis to hide Erie's identity as a defendant than there would be to hide Microsoft's, Dell's and Exxon's identify.

Under the law, all parties are treated equally. The law does not countenance privileged "hide the party's identity status" based on a party's financial wealth as a result.

common occurrence and the common issues against both defendants does <u>not</u> involve any improper evidence of defendant Harrigan's liability insurance.

VI. CONCLUSION

The plaintiffs' claims against defendant Erie involve common questions of fact and arise from the same transaction or occurrence as the plaintiffs' claims against defendant Harrigan.

Defendant Harrigan's Preliminary Objections should be dismissed as a result.

Respectfully Submitted

**WEINSTEIN, SCHNEIDER & KANNEBECKER**

Charles Kannebecker, Esq.

Page -20-

IN THE COURT OF COMMON PLEAS OF
PIKE COUNTY, PENNSYLVANIA
CIVIL

BEVERLY JANNONE and    :
ALAN JANNONE,       :
            :
   Plaintiff,      :
            :
vs           :  No. 2320-2008 - Civil
            :
DONNA R. McCOOEY and    :
STATE FARM INS. CO.,     :
            :
   Defendant     :

---

### ORDER

AND NOW, this __1ˢᵗ__ day of April, 2009, upon consideration of the

Preliminary Objections of Defendant, Donna R. McCooey to Plaintiff's Complaint, and

also upon consideration of oral argument held thereon and respective briefs, Defendant's

preliminary objections are hereby DENIED.

Plaintiffs' Complaint alleges the following facts. On February 15, 2008, in the

9/10 parking lot of the Delaware Valley Middle School, a vehicle operated by Plaintiff,

Beverly Jannone, was struck by a vehicle operated by Defendant, Donna R. McCooey.

Subsequently, Ms. Jannone, along with her husband, Alan Jannone, filed a four count

complaint. In Count One, Ms. Jannone seeks damages from McCooey for the injuries

suffered as a result of the crash. In Count Two, Mr. Jannone seeks damages from

McCooey for the loss of consortium which allegedly resulted from the crash. In Counts

Three and Four, Plaintiffs seek to enforce an insurance policy with their own carrier,

State Farm Insurance Company (hereinafter "State Farm"). Plaintiffs allege that this

insurance policy provides for underinsured motorist coverage, and that the injuries suffered by Ms. Jannone are in excess of McCooey's motor vehicle liability insurance coverage. Likewise, Plaintiffs allege that the injuries suffered by Mr. Jannone are in excess of McCooey's motor vehicle liability insurance coverage.

McCooey filed the instant preliminary objections. She first argues that the claims against her should be dismissed as they were misjoined to those claims brought against State Farm Insurance. The Court finds this argument lacks merit. Pa. R.C.P. 2229(b) dictates when plaintiffs may join defendants in a single cause of action:

> A plaintiff may join as defendants persons against whom the plaintiff asserts any right to relief jointly, severally, separately or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences if any common question of law or fact affecting the liabilities of all such persons will arise in the action.

(Emphasis added). There does not appear to be any controlling appellate case law specifically addressing whether claims against a tortfeasor and UIM insurer may be joined in the same cause of action pursuant to Rule 2229(b). The Court, however, is satisfied that the causes of action against McCooey and State Farm arise out of the same occurrence, namely the auto accident which occurred on February 15, 2008. Since the factual questions surrounding that accident are relevant to the claims against both McCooey and State Farm, their joinder is permissible. In addition, the joinder of these claims will save significant judicial resources and avoid unnecessary delay and expense to the parties. Accordingly, McCooey's first preliminary objection is DENIED.

McCooey next argues that the claims against her should be dismissed because trying them along with Plaintiffs' claims against State Farm would be unduly prejudicial

as it would necessitate the introduction into evidence of her own insurance policy.  In

support of her objection, McCooey points to Pa.R.E. 411, which states:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.  This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

Pursuant to Rule 411, then, evidence of McCooey's insurance policy is admissible so

long as it is relevant to some issue other than whether she acted negligently or otherwise

wrongfully.  McCooey's insurance policy would most certainly be relevant to State

Farms' liability, since State Farm's liability is dependent on McCooey's coverage.

Therefore it is not inadmissible pursuant to Pa.R.E. 411.

     Wherefore the Preliminary Objections of Defendant, Donna R. McCooey to

Plaintiff's Complaint are hereby DENIED.


                        BY THE COURT:



                        Honorable Gregory H. Chelak, J.



cc:    Charles Kannebecker, Esq.
       John T. McGrath, Esq.
       Daniel E. Cummins, Esq.

mm

2009 APR -2 AM 10: 14
ENTERED FOR RECORD
PIKE COUNTY, PA
OFFICE OF
PROTHONOTARY
& CLERK OF COURTS