**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARRIE SUMMERVILLE | : | CIVIL DIVISION |
| | : | NO. 2:09-CV-3261 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| PROGRESSIVE SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant | : | Honorable R. Barclay Surrick |

**O R D E R**

AND NOW, to wit, this        day of                    , 2009, upon consideration of Defendant's Motion to Bifurcate and Stay Discovery, and Plaintiff's Response thereto, it is hereby ORDERED, ADJUDGED, and DECREED that said Motion is denied.

BY THE COURT:

_____

                                                                J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARRIE SUMMERVILLE | : | CIVIL DIVISION |
| | : | NO. 2:09-CV-3261 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| PROGRESSIVE SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant | : | Honorable R. Barclay Surrick |

**PLAINTIFF'S RESPONSE TO MOTION FOR BIFURCATION**

AND NOW COMES Plaintiff, Carrie Summerville, by and through her attorney, Daniel

M. Jaffe, Esquire, and in answer to Defendant's Motion to Bifurcate and Stay Discovery, avers

as follows:

1. Admitted.

2. Admitted.

3. Denied.  It is denied that bifurcation of the bad faith claim from the UIM claim with a

stay of discovery is necessary.  It is denied that Progressive will be prejudiced by allowing both

claims to proceed simultaneously.  To the contrary, Plaintiff will be prejudiced if the claims are

severed and tried at two different times.

4 (a).  Denied.  To the contrary, the resolution as to whether Progressive had a valid
basis for offering less than their policy limits in this matter will depend in large
part upon an assessment of the evidence offered in the UIM proceeding.  If the
bad faith claim is heard at a later date, much of the same testimony presented in
the UIM claim will have to be presented again.

(b).  Denied.  To the contrary, Plaintiff does not at this time seek discovery of
privileged, confidential or otherwise protected information, nor will Plaintiff
require materials protected by the work product doctrine.  Plaintiff's will need
discovery of only the  non-privileged portions of the claim file and the

depositions of the appropriate claims adjusters.

(c).    Denied.  This matter involves only two issues: 1.  Is Plaintiff entitled to an award of underinsured motorist benefits; and 2) whether the "offer" made by Progressive, prior to the involvement of any counsel, was reasonable and made in good faith.  These issues can be tried by the same trier, at the same time. Progressive does not point to, nor can Plaintiff comprehend what, if any "privileged, confidential or otherwise protected information" currently exists that would in any way deprive Progressive of its right to assert affirmative defenses, nor does Progressive identify any such materials.

(d).    Denied. It is entirely speculative to suggest that either or both Plaintiff's and Progressive's UIM lawyers may be witnesses in the bad faith litigation, as Plaintiff's bad faith claim will be based on the nonprivileged materials contained in Progressive's files, and the testimony of Defendant's claims examiners, and expert witnesses.

5.  Denied.  For the reasons set forth hereinabove, Plaintiff does not anticipate the need to rely upon privileged, confidential or otherwise protected material during the litigation of the UIM breach of contract claim or the bad faith claim.

6.  Denied.  Assuming Progressive does not engage in further acts of bad faith during the litigation of this matter, Plaintiff will not require  discovery of privileged, confidential or otherwise protected materials.

7.  Denied.  To the contrary, judicial economy and efficiency will be served by trying both the UIM claim and the bad faith claim before one trier of fact.

WHEREFORE, Plaintiff Carrie Summerville respectfully requests that this Honorable Court enter an Order denying Progressive's Motion to Bifurcate and stay discovery.

Respectfully submitted,

/s/ Daniel M. Jaffe
DANIEL M. JAFFE, ESQUIRE
PA. Attorney I.D. No. 23229
1500 Walnut Street, Suite 1620
Philadelphia, PA 19102
(215) 546-9500
Attorney for Plaintiff

Dated: 9/8/09

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARRIE SUMMERVILLE | : | CIVIL DIVISION |
| | : | NO. 2:09-CV-3261 |
| Plaintiff | : | |
| v. | : | |
| | : | |
| PROGRESSIVE SPECIALTY | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant | : | Honorable R. Barclay Surrick |

**BRIEF IN OPPOSITION TO MOTION TO
BIFURCATE AND STAY DISCOVERY**

NOW COMES the Plaintiff, Carrie Summerville, by and through her attorney, Daniel M.

Jaffe, Esquire, and files the following Brief in Opposition to Defendant's Motion to Bifurcate

and Stay Discovery.

## I.   INTRODUCTION

Plaintiff opposes Defendant's Motion to Bifurcate and Stay the insurance bad faith claim.

A stay will unduly delay justice and result in prejudice to 77 year old Carrie Summerville, will

result in two separate trials, months apart, before separate juries, with Plaintiff incurring

unnecessary costs and expenses in having to present duplicate testimony.  Two separate trials at

two distinct points in time will further burden the judicial system and waste judicial resources.

Plaintiff's claims for bad faith arise solely from the actions of the Progressive Insurance

claims adjuster prior to the involvement of legal counsel, and prior to the institution of this

lawsuit.  Plaintiff therefore will not seek, nor will she require, discovery of materials protected

by the work product privilege, attorney/client privilege, or any other materials which might

prejudice Progressive's defense of the UIM claim.  Moreover, as only the actions of Defendant's claims handler are relevant to the bad faith claim, it is extremely unlikely that counsel for any of the parties will be witnesses in the bad faith claim.

## II.   <u>PROCEDURAL HISTORY OF THE CASE</u>

On June 25, 2009 Plaintiff filed her Complaint in the Court of Common Pleas of Philadelphia County.  On or about July 23, 2009, Progressive removed Plaintiff's Complaint to the United States District Court for the Eastern District of Pennsylvania.

## III.   <u>COUNTERSTATEMENT OF PERTINENT FACTS</u>

This action arises out of an automobile accident which occurred on November 22, 2007. Then 75 year old Carrie Summerville was a passenger in her sister, Bertha Johnson's vehicle when it was broadsided by Brahim Epps at the intersection of Baltimore and Union Avenues, Upper Darby, Pennsylvania.

 Summerville was taken to the Hospital of the University of Pennsylvania for multiple injuries including, inter alia, loss of consciousness, cardiac contusion, liver laceration, multiple trauma to her back, arm, hip, abdomen and legs.   Upon discharge from the hospital, Plaintiff had to be cared for by her sister, Ms. Johnson, in whose care she remained for a period of 4 ½ months, or until mid-April, 2008.   During this time Plaintiff had difficulty ambulating, was required to use a walker through December, 2007, and a cane thereafter through January, 2008. Claimant's treating physician has opined that her pain will be chronic and permanent, with limitations in standing, walking, and walking on uneven surfaces and stairs, with chronic pain

2

and weakness.

At the time of the accident Defendant Epps was insured by Allstate Insurance Company. The Allstate policy provided Mr. Epps liability coverage for bodily injury in the amount of $15,000 per person/$30,000 per occurrence.

Ms. Johnson was insured with Defendant Progressive Specialty Insurance Company, which provided for both bodily injury and underinsured motorist coverage (UIM) in the amount of $50,000 per person. Summerville is insured under the Johnson policy for UIM as she was a passenger in that vehicle at the time of the accident.

Summerville originally commenced a tort action in the Philadelphia Court of Common Pleas against Johnson and Epps. After discovery was conducted, all parties agreed that Epps was solely responsible for the accident and that Johnson was not at fault.

While Summerville was concluding negotiations with Epps/Allstate, she placed Progressive on notice of her claim for UIM benefits in the amount of $50,000 and supplied Progressive with documentation in support of her claim on April 15, 2009.

Subsequent communications and correspondence with the Progressive claims handler failed to result in a fair or firm offer of settlement and the actions of the Progressive claims handler form the sole basis for the allegations of bad faith contained in Count II of Plaintiff's Complaint.

The gravamen of Plaintiff's bad faith claim is that Progressive through its claims examiner acted in bad faith by failing to properly investigate and/or offer a reasonable payment of Plaintiff's underinsured motorist claim.

3

## IV.  STATEMENT OF THE QUESTION INVOLVED

WHETHER THIS COURT SHOULD BIFURCATE PLAINTIFF'S BAD FAITH CLAIM
FROM PLAINTIFF'S UIM CLAIM, AND STAY DISCOVERY ON PLAINTIFF'S BAD
FAITH CLAIM WHERE 77 YEAR OLD PLAINTIFF SUMMERVILLE WOULD SUFFER
PREJUDICE IN THE DELAY ENGENDERED, INCUR ADDITIONAL COSTS, AND BE
REQUIRED TO PRESENT DUPLICATE EVIDENCE IN SEPARATE TRIALS, TO
SEPARATE JURIES, MONTHS APART.

Suggested Answer:  NO.


## V.  ARGUMENT

A.    The Majority Review Rejects Bifurcation

Under Federal Rule of Civil Procedure 42(b) the Court has discretion to bifurcate

separate claims and issues "[f]or convenience, to avoid prejudice, or to expedite and economize."

Fed.R.Civ.P. 42.  Bifurcating a trial "is a matter to be decided on a case-by-case basis and must

be subject to an informed discretion by the trial judge in each instance."  Lis v. Robert Packer

Hosp., 579 F.2d 819, 824 (3d Cir. 1978) citing Idzojtic v. Penn. R.R. Co., 456 F.2d 1228, 1230

(3d Cir. 1971)).  The moving party bears the burden of showing that bifurcation would "serve

judicial economy, avoid inconvenience, and not prejudice any of the parties."  AstenJohnson v.

Columbia Cas. Co., No. 03-1552, 2006 U.S. Dist. LEXIS 42606, 2006 WL 1791260, at *2 (E.D.

Pa. June 22, 2006); see also Zurich Ins. Co. v. Health Sys. Integration Inc., No. 97-4994, 1998

U.S. Dist. LEXIS 5927, at *7-9 (E.D. Pa. April 28, 1998); Nathanson v. Aetna Cas. & Sur. Co.,

No. 01-CV-3377, 2001 U.S. Dist. LEXIS 18248, at *4 (E.D. Pa. Nov. 7, 2001).  Rohm and Haas

Company and Morton International Inc. v. Utica Mutual Insurance Company, No. 07-584, 2008

U.S. Dist. LEXIS 48077 (E.D. Pa. June 20, 2008).

Pennsylvania cases involving claims for uninsured motorist and underinsured motorist benefits were, until 2005, subject to mandatory arbitration clauses contained in automobile insurance policies.  As explained in the trial court opinion in <u>Gunn v. The Automobile Ins. Co. of Hartford, Connecticut</u>, No. GD 07-002888 (Allegheny County, July 25, 2008), appeal denied, 2009 WL 1001029, 2009 Pa. Super 70 (April 15, 2009) in December 2005, in what is commonly referred to as the <u>Koken</u> case (<u>Ins. Federation of Pennsylvania, Inc. v. Department of Ins</u>., 889 A.2d 550) the Pennsylvania Supreme Court ruled that the Insurance Department did not have authority to require mandatory binding arbitration for UM and UIM claims.  As insurance policies containing the mandatory arbitration provisions are being phased out and replaced with policies that do not mandate arbitration, the trial courts of Pennsylvania are now encountering complaints, such as in the case *sub judice* which raise both UIM and bad faith claims. Therefore, claims combining UIM and bad faith actions under 42 Pa.C.S.A. §8371 have only recently begun appearing in the District Courts,  upon removal on the basis of diversity of jurisdiction.  There has therefore only been a handful of cases filed with the exact combination of claims as filed in the case at bar, i.e. UIM and bad faith.

 Limiting their universe to these "Koken" cases, Progressive references the Scheduling Order in <u>Reinhard v. Progressive Insurance Company</u>, No. 09-cv-1167, (Eastern District of Pennsylvania, April 16, 2009)  issued by the Honorable Juan R. Sanchez as a case where bifurcation and stay was ordered. Checking the dockets, however, reveals that Progressive's Motion appears not to have been opposed, and no opinion was issued.

On the other hand, when Motions for Bifurcation and a Stay of Discovery have been contested in analogous cases in the past, the United States District Court for the Eastern District

of Pennsylvania has unanimously denied bifurcation.

In Mark Nathanson, et al. v. Aetna Casualty and Surety Company, et al., No. 01-cv-3377,

(Eastern District of Pennsylvania, November 7, 2001) ( Exhibit A) the Honorable Edmund V.

Ludwig addressed a Motion for Bifurcation and stay of an action for breach of an insurance

contract, bad faith and promissory estoppel.   In denying Defendant's Motion for Bifurcation and

Stay, Judge Ludwig noted as follows:

> "Defendants request bifurcation of the contractual and extra-contractual claims so
> as to avoid undue prejudice and promote judicial efficiency.  Defendant's Brief in
> Support of Motion for Bifurcation and Say at 1.  Under Fed.R.Civ.P. 42(b), issues
> may be severed and tried separately, "in furtherance of convenience or to avoid
> prejudice, or when separate trials will be conducive to expedition and economy..."
> Fed.R.Civ.P. 42(b).  However, bifurcation is an infrequent exception.  9 Wright
> & Miller, Federal Practice and Procedure §2388 at 474 (2d Ed. 1994) ("The
> piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the
> same issue in severed claims is not to be the usual court.") The party moving for
> separate trials has the burden of proving that it is necessary "in light of the
> general principle that a single trial tends to lessen the delay, expense and
> inconvenience to all parties."  McRae v. Pittsburgh Corning Corp., 97 F.R.D.
> 490, 492, (E.D.Pa. 1983).
>
> Here, plaintiffs' contractual and extra-contractual claims are interrelated and
> bifurcation would be likely to lead to additional inconvenience and delay, not
> less.  The bifurcation request will therefore be rejected." Id.1-2.

In Frederick & Emily's, Inc. v. Westfield Group, No. 03-cv-6589, 2004 U.S. District

LEXIS 17274 (E.D. Pa. August 26, 2004) (Exhibit B) the Honorable Paul S. Diamond addressed

Defendants arguments to sever and stay the bad faith claim from Plaintiff's insurance contract

action and, but for the nature of the insurance contract involved, is on all fours with the case at

bar.  There, like here, Defendant argued that judicial economy weighed heavily in its favor, that

a denial of its severance motion would be highly prejudicial, and that allowing discovery on the

§ 8371 claim would dramatically expand discovery and give Plaintiff access to the insurer's

6

trade secrets and proprietary information.    Westfield further argued that trying the breach of contract and bad faith claims together would compound the prejudice and that evidence relevant to the § 8371 claim would inflame the jury.  Unpersuaded by any of Westfield's arguments, Judge Diamond noted that "Westfield's very general arguments would compel the severance of virtually every bad faith claim brought together with a claim that an insurance contract was breached.  As a practical matter, this would largely nullify § 8371, as few Plaintiffs would have the resources to prosecute the bad faith claims only after they had successfully prosecuted their breach of contract claims."

    In <u>Rohm and Haas Company and Morton International Inc. v. Utica Mutual Insurance Company</u>, No. 07-584, 2008 U.S. Dist. LEXIS 48077 (E.D. Pa. June 20, 2008) (Exhibit C) Honorable Gene E.K. Pratter rejected Utica Mutual Insurance Company's motion to sever and stay a bad faith claim, and held as follows:

> "Exercising its discretion on this issue, the Court concludes the bifurcation of Rohm and Haas's bad faith claim from the underlying contractual claim would not necessarily be more convenient, expeditious, or economical, because it is possible that a trial on the bad faith claim would proceed regardless of the outcome of the duty to defend claim.  See Frederick & Emily's Inc., 2004 U.S. Dist. LEXIS 17274 at *7-8.  It is likely that discovery on the duty to defend and bad faith claims will concern much of the same or related evidence and will involve deposing many of the same individuals about events that occurred in the same or reasonably close time period.  Trying both claims together could be more orderly and efficient under all the pertinent circumstances, and, therefore, separating potentially overlapping discovery and trials, either or both of which might proceed independently, would be the "opposite of "expeditious [*14] resolution of the litigation.'" Id.  In addition, Utica Mutual has not shown that there would be any meaningful savings of time, money or effort by bifurcation. Indeed, the risk of prejudice to Utica Mutual by not bifurcating the issues at this time is unclear."
> <u>Rohm and Haas Company and Morton International Inc. v. Utica Mutual Insurance Company</u>, at page 4.

Defendant cites to two Pennsylvania trial courts that have addressed the issue before this

court.  Defendant argues that the Lehigh County Common Pleas Court, in <u>Boerner v.</u>

<u>Progressive</u>, 2008-c-0499 "effectively provided for a bifurcation and stay of the bad faith claim

from the UIM claim by issuing a Scheduling Order, which they attached to their Motion as

Exhibit B.  However, as in Reinhard, supra, it cannot be gleaned from the Scheduling Order

whether or not Plaintiff opposed bifurcation, and the trial court there did not issue a decision.

On the other hand, in <u>Gunn v. The Automobile Ins. Co. of Hartford, Connecticut</u>, Court

of Common Pleas of Allegheny County, Pennsylvania, No. GD 07-002888, Honorable R.

Stanton Wettick, in a case based on facts nearly identical to this case, denied Hartford's request

for bifurcation and stay of the UIM claim pending resolution of the UIM claim.[1]  In rejecting the

insurer's request for bifurcation and stay, Judge Wettick pointed out that in most instances, it

will be more convenient for the parties and the court if the same trier who presides over the UIM

trial also tries the bad faith claim, as usually, the merits of the bad faith claim depend, at least to

some extent, on whether the insurance company offered credible evidence to justify its decision

to deny UIM benefits (or to pay less than the policy limits).  <u>Gunn</u>, at page 4.

Judge Wettick also noted that trying both claims at the same time avoids the need for

duplicate testimony.

And, while Judge Wettick points out that the same trial judge who hears the testimony

before the jury will then have that testimony freshly in mind when deciding the bad faith case, in

the Federal Courts, where both claims will be heard by the jury, it is, *a fortiori*, essential that the

same jury hear the necessary evidence as to both claims, to avoid the undue expense of having to

---

[1]Under Pennsylvania law, there is no right to jury trial on a bad faith claim.   Therefore,
the *Gunn* decision discusses the need for a separate bench trial immediately following jury trial
on the contract claim.   In the matter before this court, a jury trial has been perfected as to both
the UIM and bad faith claims.

8

impanel two separate juries, at two separate times, to hear much of the same duplicate testimony which will be elicited in these intertwined actions.

Defendant goes to great lengths to distinguish <u>Gunn</u>, arguing that the Federal Court proscription on discovery of work product, not available in Pennsylvania, would be lost to them as a shield if discovery were permitted to go forward on the bad faith claim simultaneously with the UIM claim.   This argument fails for two reasons.  Here, Plaintiff's claims do not depend upon work product, as the acts of bad faith complained of were committed by the claims examiner and the insurance company prior to the involvement of counsel.  And, as to otherwise privileged information, Plaintiff is confident that the trial judge can manage any issues that arise during discovery regarding claims of privilege.


B.      THE ISSUES AND EVIDENCE NECESSARY FOR TRIAL OF A UIM AND BAD FAITH CASE WILL NOT CAUSE ATTORNEY-CLIENT PRIVILEGE ISSUES OR RUN AFOUL OF THE WORK PRODUCT DOCTRINE.

Defendants only argument for Bifurcation is that Plaintiff "may" seek discovery of privileged and  confidential information. That argument is not only purely speculative in nature, but that is true in any case. In any case opposing sides "may" request confidential information; however it does not mean that the request will be granted. Plaintiff does not have any plans of requesting any confidential or privileged information from the defendants.

In its brief, Defendant suggests that a victory for Progressive on the UIM claim would extinguish the bad faith claim and obviate the need for trial thereon.  This is incorrect under Pennsylvania law.   It is well settled under 42 Pa.C.S.A. § 8371 that bad faith "is not dependent upon success on the merits, or trial at all, of the contract claim.   <u>Nealy v. State Farm Mut. Auto</u>

9

Ins. Co., 695 A.2d 790, 793 (Pa. Super.Ct. 1997); Romano v. Nationwide Mut. Fire Ins. Co., 646 A.2d 1228, 1231 (Pa. Super. Ct. 1994); March v. Paradise Mut. Ins. Co., 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994). It is a "separate cause of action." Nealy, 695 A2d 790. Similarly federal courts have likewise decided that bad faith statutory claims under 42 Pa.C.S. § 8371 are independent of the underlying claim which is unaffected by the success or failure of the underlying insurance contract claim. See, Margolies v. State Farm Fire and Cas. Co., 810 F. Sup. 637, 642 (E.D. Pa. 1992); Kauffman v. Aetna Cas. And Sur. Co., 794 F. Supp. 137, 140 (E.D. Pa. 1992); Lombardo v. State Farm Mut. Auto Ins. Co., 800 F. Supp. 208, 214 (E.D. Pa. 1992); see also Gallatin Fuels v. Westchester Fire Ins. Co., 244 Fed. Appx. 424 (3rd Cir. 2007).

Several cases have specifically permitted plaintiffs to bring causes of action for bad faith even after the underlying insurance contract action failed. In Nealy, 695 A.2d 790, 791, an insured brought an insurance bad faith claim even after the plaintiff's UIM claim failed in arbitration. The court explained that the bad faith claim was "separate and distinct" and could be brought "contemporaneously with or subsequent to [the] contractual insurance claims." Id., at 794. Similarly, in March, 646 A.2d at 1257, an insured's bad faith claim was remanded for further proceedings despite the fact that the dismissal of the contract claim was affirmed. Quite clearly, a statutory bad faith claim under § 8371 may proceed regardless of the success or failure of the underlying contract claim.

Finally, Defendant suggests that discovery on the bad faith would be unduly time consuming. However, Defendant has identified one adjuster, and the claims file, in its Rule 26 Disclosure. At most, Plaintiff anticipates that she will require discovery of the claims file, answers to interrogatories, and the deposition of two adjusters in order to complete her

discovery on the bad faith action.

# VI. CONCLUSION

Defendants fail to meet their burden of establishing why Bifurcation is necessary.

Separating the UIM Claim from the Bad Faith Claim would not be more convenient, expeditious

or economical. On the contrary, separate trials would be more time consuming, inconvenient for

all the parties, and less economical not only for the parties but also for The Court. As Judge

Diamond noted in <u>Frederick & Emily's, Inc. v. Westfield Group</u>, No. 03-cv-6589, 2004 U.S.

District LEXIS 17274 (E.D. Pa. August 26, 2004), severance of insurance claims based on

general arguments will essentially nullify bad faith claims because few Plaintiffs have the

resources to try both causes of action. It would be redundant to hold two separate trials and

present the same evidence and place 77 year-old Carrie Summerville through the burden of

enduring two trials. In closing, Defendants did not establish any adequate reasons why the claims

should be severed and it would be in all the parties best interet to keep the claims together and

give Plaintiff her day in court.

Respectfully submitted,

/s/ Daniel M. Jaffe
DANIEL M. JAFFE, ESQUIRE
PA. Attorney I.D. No. 23229
1500 Walnut Street, Suite 1620
Philadelphia, PA 19102
(215) 546-9500
Attorney for Plaintiff

Dated: 9/8/09

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on September 8, 2009, a copy of the within

Response to Motion to Bifurcate and Stay Discovery was filed electronically.  Notice of this

filing will be sent to all parties by operation of the Court's electronic filing system.   Parties may

accept this filing through the Court's system.

> Robert E. Dapper, Jr., Esquire
> Dapper, Baldasare, Benson, Behling & Kane, P.C.
> Four Gateway Center, 10th Floor
> 444 Liberty Avenue
> Pittsburgh, PA 15222
> *Counsel for Defendant*
>
> E. Laurence Kates, Esquire
> Forry Ullman
> Two Commerce Square, 26th Floor
> 2001 Market Street, Suite 2630
> Philadelphia, PA 19103
> *Counsel for Defendant*

> /s/ Daniel M. Jaffe
> DANIEL M. JAFFE, ESQ.
> Attorney for Plaintiff

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK NATHANSON, ET AL.      :
                                :     CIVIL ACTION
                                :
            v.                     :
                                :     No. 01-CV-3377
AETNA CASUALTY AND SURETY     :
COMPANY, ET AL.                  :

## MEMORANDUM

Ludwig, J.                                                         November 7, 2001

       This is an action for breach of an insurance contract, bad faith, and promissory estoppel in which defendants[1] move: (1) to amend the answer to assert a statute of limitations defense and to plead a misrepresentation counterclaim; and (2) to sever all extra-contractual claims and for a stay of extra-contractual discovery. Jurisdiction is diversity and supplemental. 28 U.S.C. §§ 1332, 1441 and 1446. Over plaintiffs' objections, the motion to amend will be granted and the motion to bifurcate and stay will be denied.

## I. Motion to amend - granted.

       If not raised in the initial answer, a statute of limitations defense is waivable. Fed. R. Civ. P. 8 (c), 12 (h). However, under Rule 15 (a), a party may be permitted to amend and "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15 (a).

       "In the absence of substantial or undue prejudice, denial instead must be based on bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment."

---

[1]Defendants are Aetna Casualty and Surety Company, Travelers Indemnity Company, and the Automobile Insurance Company of Hartford. Plaintiffs are Mark and Jayne Nathanson, husband and wife.

Lorenz v. CSX Corp., 1 F.3d 1406, 1413-14 (3d. Cir. 1993), citing Heyl & Patterson Int'l Inc. v. F.D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 425 (3d Cir. 1981). "Prejudice to the non-moving party is the touchstone for the denial of an amendment." Id., quoting Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978). In this context, prejudice means "undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party." Deakyne v. Commissioners of Lewes, 416 F.2d 290, 300 (3d Cir. 1990).

Here, the original answer was filed on July 5, 2001 and there have been no case management or trial preparation developments that would amount to prejudice. See Bechtel v. Robinson, 886 F.2d 644, 652 (3d. Cir. 1989) (motion to amend complaint granted, Fed. R. Civ. P. 15 (c) - no prejudice will result because case was in the early stages of discovery).

As to defendants' inclusion of a counterclaim in the amended answer, a party may obtain permission to allege a counterclaim that was omitted "through oversight, inadvertence, or excusable neglect, or when justice requires." Fed. R. Civ. P. 13 (f). Leave to do so is favored, 6 Wright & Moore, Federal Practice and Procedure § 1430 at 213 (2d Ed. 1990), and there appears to be no reason to sustain plaintiffs' objections in this case.[2]

---

[2]Although the wording of Rule 13 (f) differs from Rule 15 (a), this variation has not led to significantly different standards for granting leave to amend. 6 Wright & Miller, Federal Practice and Procedure § 1430 at 227 (2d Ed. 1990). If anything,"the clause in Rule 13 (f) permitting amendments 'when justice requires' is especially flexible and enables the court to exercise its discretion and permit amendment whenever it seems desirable to do so." Perfect Plastics Indus. v. Cars & Concepts, 758 F. Supp. 1080, 1081-82 (W.D.Pa. 1991).

## II.  Motion for bifurcation and stay - denied.

Defendants request bifurcation of the contractual and extra-contractual claims so as to avoid undue prejudice and promote judicial efficiency.  Defendants' Brief in Support of Motion for Bifurcation and Stay at 1.  Under Fed. R. Civ. P. 42 (b),  issues may be severed and tried separately, "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy..." Fed. R. Civ. P. 42 (b). However, bifurcation is an infrequent exception.  9 Wright & Miller, Federal Practice and Procedure § 2388 at 474 (2d Ed. 1994) ("The piecemeal trial of separate issues in a single lawsuit or the repetitive trial of the same issue in severed claims is not to be the usual course.").  The party moving for separate trials has the burden of proving that it is necessary "in light of the general principle that a single trial tends to lessen the delay, expense and inconvenience to all parties." McRae v. Pittsburgh Corning Corp., 97 F.R.D. 490, 492 (E.D. Pa. 1983).

Here, plaintiffs' contractual and extra-contractual claims are interrelated and bifurcation would be likely to lead to additional inconvenience and delay, not less. The bifurcation request will therefore be rejected.

Whether plaintiffs' bad faith claim will survive if the contract claim is dismissed on the merits need not be decided at this time. See Zurich Ins. Co. v. Health Systems Integration, Inc., 1998 WL 211749 at 3 (E.D.Pa. 1998) (denying severance of bad faith claim and stay of discovery because a decision on the outcome of the case would be premature).

_____
Edmund V. Ludwig,  J.

EXHIBIT  B

LEXSEE òðð ô@äKâK@ÄÉâãK@ÓÅçÉâ@ñ÷ò÷ô

**FREDERICK & EMILY'S, INC., Plaintiff, v. WESTFIELD GROUP, Defendant.**

**CIVIL ACTION NO. 03-CV-6589**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**2004 U.S. Dist. LEXIS 17274**

**August 25, 2004, Decided**
**August 26, 2004, Filed; August 27, 2004, Entered**

**DISPOSITION:** Motions to sever claims and stay discovery were denied.

**COUNSEL:** For FREDERICK & EMILY'S, INC., Plaintiff: THOMAS D. DELL, LEAD ATTORNEY, DELL & ASSOCIATES, LANCASTER, PA.

For WESTFIELD INSURANCE COMPANY, Defendant: CHARLES SCOTT, LEAD ATTORNEY, RYBNY, NELSON, LEVINE, DELUCA & HORST, BLUE BELL, PA; CHESTER F. DARLINGTON, LEAD ATTORNEY, MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN, PHILA, PA. ROBERT M. RUNYON, III, LEAD ATTORNEY, NELSON, LEVINE, DE LUCA & HORST, LLC, BLUE BELL, PA.

**JUDGES:** Paul S. Diamond, J.

**OPINION BY:** Paul S. Diamond

**OPINION**

Diamond, J.

**Memorandum**

Defendant Westfield Group asks the Court (1) to sever the breach of contract claim brought by Plaintiff Frederick & Emily's, Inc. from Plaintiff's bad faith claim; and (2) to stay discovery relative to Frederick's bad faith claim until the contract claim is resolved. I deny Westfield's motion.

**I. Background**

Frederick, a church pew restorer, has alleged that in November 2002, it purchased from Westfield a commercial property insurance policy that includes business interruption coverage. Frederick further alleges that a March 5, 2003 fire at its offices interrupted Frederick's business, resulting in lost income compensable under the insurance policy. Westfield, believing that the fire did not cause Frederick to lose any income, denied Frederick's claim. On October 29, 2003, Frederick sued Westfield in the Lancaster County Common Pleas Court, alleging breach of contract and bad faith under 42 Pa.C.S. § 8371. On December 8, 2003, Westfield removed the case to this Court.

**II. The Motion to Sever and Stay**

Westfield argues primarily that judicial economy weighs heavily in its favor: that a defense verdict on the breach of contract claim would necessarily dispose of Plaintiff's § 8371 claim. In that circumstance, Westfield believes the efforts of the parties and the Court expended on the bad faith claim would have been wasted.

Westfield also argues that denial of its severance motion will be highly prejudicial. Allowing discovery on the § 8371 claim, in Westfield's view, will not only dramatically expand discovery, it will give Frederick access to Westfield's

trade secrets and proprietary information. Westfield also argues that trying the breach of contract and § 8371 claims together will compound the prejudice: evidence relevant to the § 8371 claim will inflame the jury; the differing standards of proof (preponderance of evidence on the breach of contract claim; clear and convincing evidence on the § 8371 claim) will be impossibly confusing.

Finally, Westfield argues that the delay resulting from proceeding first with the breach of contract claim would not be prejudicial because Frederick could receive delay damages should it ultimately prevail on both its claims.

### III. Discussion

Federal Rule of Civil Procedure 21 provides that "any claim against a party may be severed and proceeded with separately." FED. R. CIV. P. 21 (2004). In applying this Rule, a court has considerable discretion in determining whether or not to grant a severance. Grigsby v. Kane, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003); Rodin Properties-Shore Mall, N.V. v. Cushman & Wakefield of Pennsylvania, Inc., 49 F. Supp. 2d 709, 721 (D.N.J. 1999). Although a court may sever "for any sound reason of judicial administration," 10-54 Moore's Federal Practice -Civil § 54.29 [7] [c], it must first balance several factors, including "the convenience of the parties, avoidance of prejudice to either party, and promotion of expeditious resolution of the litigation." United States v. AMTRAK, No. 86-1094, 2004 U.S. Dist. LEXIS 10867, at *21-22 (E.D. Pa. Jun. 15, 2004) (quoting Official Comm. of Unsecured Creditors v. Shapiro, 190 F.R.D. 352, 355 (E.D. Pa. 2000).

In the circumstances of this case, there is no "balance" to strike: all the factors weigh heavily against severance. Westfield's claims of "prejudice," however heated, appear to have little substance. For instance, Westfield argues that allowing discovery on the § 8371 claim will dramatically expand discovery and compromise Westfield's proprietary information. Westfield does not remotely explain why this is so, and the Record appears to show the opposite. There is a very considerable overlap between Frederick's discovery requests intended to obtain evidence relevant to both the breach of contract and § 8371 claims. Indeed, only three interrogatories (and corresponding document requests) appear to be directed specifically at "bad faith" evidence:

Interrogatory 25 states: *"How is the March 5, 2003 loss in this action outside of policy guidelines?"*

Interrogatory 30 states: *"Why did Defendant fail to refuse to settle in good faith or negotiate in good faith to settle this action?"*

Interrogatory 34 states: *"How is Defendant's failure to settle Plaintiff's action not bad faith?"*

Westfield does not adequately explain how answering these questions or producing related documents will compromise sensitive or proprietary information. Moreover, Westfield does not suggest that information relevant to the § 8371 claim is so sensitive that it is undiscoverable. Rather, Westfield seeks only to delay its discovery until after the company is found to have breached the insurance agreement. Further, corporate state of mind evidence of this type is commonly the focus of commercial litigation. In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 676 F.2d 51 (3d Cir. 1982) (state of mind relevant in patent and antitrust litigation to determine whether company intended to defraud the Patent Office); Martin v. PNC Fin Servs. Group, No. 02-7191, 2003 U.S. Dist. LEXIS 15552 (E.D. Pa. Jul. 24, 2003) (company's state of mind relevant in securities fraud litigation); Specialty Ins. v. Royal Indem. Co., No. 99-3689, 2004 U.S. Dist. LEXIS 13386, at *13-16 (E.D. Pa. Jul. 9, 2004) (inquiry into corporation's state of mind to determine breach of covenant of good faith and fair dealing claim). In these circumstances, Westfield has not made out prejudice warranting a stay of discovery and a severance. Should Frederick dramatically expand its discovery requests, calling for the production of evidence whose proprietary nature cannot be shielded by a confidentiality agreement, Westfield is, of course, free to seek appropriate protective relief.

Westfield also argues in very general terms that the presentation of "bad faith" evidence will inflame the trial jury. Surely Westfield here inadvertently suggests too much. If the jury is indeed incensed by "bad faith" evidence, this rather strongly suggests that once Frederick is provided the discovery to which it is entitled, it will find evidence supporting its "bad faith" claim. The presentation of such evidence would simply prove that claim; it would not unfairly prejudice Westfield. If Westfield can show the existence of specific evidence whose prejudicial impact on the jury will greatly outweigh its probative value regardless of even a strong cautionary instruction, I would be prepared to revisit this issue. Until Westfield makes such a showing, however, the drastic remedy of severance is not warranted.

2004 U.S. Dist. LEXIS 17274

Westfield's claim that differing standards of proof will confuse the jury is also unpersuasive. Juries commonly determine claims of civil fraud --which must be proven by clear and convincing evidence --along with claims subject to a preponderance standard. Fallowfield Dev. Corp. v. Strunk, No. 89-8644, 1994 U.S. Dist. LEXIS 12758 (E.D. Pa. Sep. 9, 1994); Tyler v. O'Neill, No. 97-3353, 1998 U.S. Dist. LEXIS 20007 (E.D. Pa. Dec. 15, 1998).

In any event, Westfield's claims of jury prejudice and confusion --assuming they have any substance --are better addressed in a request for bifurcation at trial. FED. R. CIV. P. 42(b) (2004). They do not warrant severing and staying Frederick's § 8371 claim.

Westfield's contention that Frederick cannot proceed with its § 8371 claim if its breach of contract claim fails is doubtful. A significant body of Third Circuit law strongly suggests that § 8371 claims exist apart from the underlying contract claims. See Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 529 (3d Cir. 1997) (42 Pa.C.S. § 8371 provides an "'independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim'" (quoting Nealy v. State Farm Mut Auto Ins. Co., 695 A.2d 790, 792 (Pa. Super. Ct. 1997); accord March v. Paradise Mut. Ins. Co., 435 Pa. Super. 597, 646 A.2d 1254, 1256 (Pa. Super. Ct. 1994)); Schubert v. Am. Indep. Ins. Co., No. 02-6917, 2003 U.S. Dist. LEXIS 10769, at *10-11 (E.D. Pa. Jun. 24, 2003) (holding that § 8371 creates an independent cause of action); Doylestown Electrical Supply Co. v. Maryland Casualty Insurance Co., 942 F. Supp. 1018, 1020 (E.D. Pa. 1996) ("a plaintiff may succeed on its bad faith claim even if it fails on the underlying breach of contract claim"). Accordingly, trial on the bad faith claim might very well proceed regardless of the outcome of the breach of contract litigation. Thus, severing and staying the § 8371 claim would obligate Frederick to fund and prosecute two largely overlapping discovery efforts and trials. This would be the opposite of "expeditious resolution of the litigation." Delay damages, assuming they would be awarded some time in the future,  would not compensate Frederick for this prejudice.

Perhaps most significant, Westfield's very general arguments would compel the severance of virtually every bad faith claim brought together with a claim that an insurance contract was breached. As a practical matter, this would largely nullify § 8371, as few plaintiffs would have the resources to prosecute the bad faith claims only after they had successfully prosecuted their breach of contract claims. Perhaps this is why Westfield has offered almost no federal authority to support its request for severance. See, e.g., Helman v. Erie Insurance Exchange, No. A.D. 1997-269 C.C.P. Franklin Co. (Feb. 16, 1998); Roycroft v. Nationwide Mutual Fire Ins. Co., No. 92-Su-0562301, C.C.P. York Co. (1996); Corrente v. Fitchburg Mut. Fire Ins. Co., 557 A.2d 859 (R.I. 1991). Federal courts, in applying state law, must take special care not to allow federal procedural rules to curtail or even eliminate substantive rights. 28 U.S.C.S. § 2072 (b) (2004) ("[Rules of procedure] . . . shall not abridge, enlarge or modify any substantive right").

This is not to say that severance should always be denied. There may well be cases where the prompt determination of other, simpler claims might necessarily also resolve more complex § 8371 claims. See, e.g., Vanderveer v. Erie Malleable Iron Company, 238 F.2d 510 (3d Cir. 1956); Nicklos v. Firestone Tire & Rubber Co., 346 F. Supp. 185 (E.D. Pa. 1972). Further, in cases where "bad faith" claims themselves appear to have been brought in bad faith --whether artificially to inflate potential damages, to injure a defendant unnecessarily, or for any other vexatious reason --severance could well be warranted. Such determinations necessarily are made on a case by case basis.

The Motion to Sever and Stay Plaintiff's Bad Faith Claims is denied.

An appropriate Order follows.

**Paul S. Diamond, J.**

**Order**

AND NOW, this 25th day of August, 2004, upon consideration of Defendant's Motion to Sever and Stay Plaintiff's Bad Faith Claims and Plaintiff's response, it is ORDERED and DECREED that the Motion is DENIED.

**BY THE COURT:**

**Paul S. Diamond, J.**

August 25, 2004

EXHIBIT C



LEXSEE

**ROHM AND HAAS COMPANY and MORTON INTERNATIONAL, INC., Plaintiffs, v. UTICA MUTUAL INSURANCE COMPANY, Defendant.**

CIVIL ACTION NO. 07-584

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**2008 U.S. Dist. LEXIS 48077**

**June 20, 2008, Decided**
**June 23, 2008, Filed**

COUNSEL: [*1] For ROHM AND HAAS COMPANY, MORTON INTERNATIONAL, INC., Plaintiffs: H. JUSTIN PARK, JENNIFER DUFAULT JAMES, LEAD ATTORNEYS, SCHNADER, HARRISON, SEGAL & LEWIS, LLP, PHILADELPHIA, PA.

For UTICA MUTUAL INSURANCE COMPANY, Defendant: LILY E. KOOHDARY, LEAD ATTORNEY, BENNETT, BRICKLIN & SALTZBURG, PHILA, PA; LON A. BERK, RUTH S. KOCHENDERFER, SERGIO F. OEHNINGER, LEAD ATTORNEYS, HUNTON & WILLIAMS, LLP, MCLEAN, VA.

For UTICA MUTUAL INSURANCE COMPANY, Counter Claimant: LILY E. KOOHDARY, LEAD ATTORNEY, BENNETT, BRICKLIN & SALTZBURG, PHILA, PA; LON A. BERK, SERGIO F. OEHNINGER, LEAD ATTORNEYS, HUNTON & WILLIAMS, LLP, MCLEAN, VA.

For ROHM AND HAAS COMPANY, MORTON INTERNATIONAL, INC., Counter Defendants: H. JUSTIN PARK, JENNIFER DUFAULT JAMES, LEAD ATTORNEYS, SCHNADER, HARRISON, SEGAL & LEWIS, LLP, PHILADELPHIA, PA.

JUDGES: GENE E. K. PRATTER, UNITED STATES DISTRICT JUDGE.

OPINION BY: GENE E. K. PRATTER

OPINION

MEMORANDUM

PRATTER, J.

INTRODUCTION

Plaintiffs Rohm and Haas Company and Morton International, Inc., a subsidiary of Rohm and Haas Company (collectively, "Rohm and Haas"), commenced this action against Utica Mutual Insurance Company ("Utica Mutual"), seeking a declaratory judgment that Utica Mutual has a duty to defend and [*2] indemnify Rohm and Haas with respect to lawsuits brought against Rohm and Haas by various individuals arising out of alleged exposure to contaminated air and groundwater from Morton International, Inc.'s Ringwood, Illinois manufacturing facility. Additionally, Rohm and Haas asserted breach of contract and bad faith claims against Utica Mutual, claiming, inter alia, that Utica Mutual had no reasonable basis to refuse to defend the underlying lawsuits, knew or recklessly disregarded the fact that it had no reasonable basis for denying its duty to defend, failed to "conduct a substantial, thorough and meaningful investigation" into Rohm and Haas's insurance claim, and "used the investigatory process as a pretense for obtaining information to use against [Rohm and Haas] in litigation." (Am. Comp. PP 76-80.) [1]

1 On September 26, 2007, the Court issued a Scheduling Order reflecting the parties' agreement to bifurcate discovery and trial, and ordering that discovery as to Count One (seeking declaration of corporate succession), Count Two (seeking declaration of duty to defend), Count Four (breach of contractual duty to defend claim), and Count Five (42 Pa. Cons. Stat. Ann. § 8371 bad faith [*3] claim) would proceed initially, while staying discovery relating to Count Three

2008 U.S. Dist. LEXIS 48077, *

(seeking declaration of duty to indemnify) until a later date.

Utica Mutual has moved to bifurcate discovery and trial relating to the bad faith claim (Count Five), pending the outcome of the duty to defend claims (Counts Two and Four). Utica Mutual argues that the bad faith claim should proceed separately later for reasons of judicial economy, to avoid undue prejudice and expense, and, Utica Mutual contends, because a ruling in its favor on the duty to defend claim necessarily will dispose of the bad faith claim. (Def.'s Mem. Support of Mot. to Bifurcate at 2-4.) In response, Rohm and Haas argues that the bad faith claim "does not necessarily depend on the duty to defend claim," that bifurcation would waste time and resources, and that Utica Mutual will not suffer prejudice from having the bad faith issue proceed with the duty to defend issue. [2] (Pl.'s Mem. Opp'n Motion to Bifurcate at 2-9.)

> 2  Utica Mutual's Motion to Bifurcate, filed on May 7, 2008, did not explain why Utica Mutual did not previously attempt to bifurcate the bad faith claim. As Rohm and Haas points out in its Opposition Memorandum, nearly [*4] nine months passed between the Court's September 26, 2007 Scheduling Order, which separated discovery for the duty to indemnify claim (Count Three) from the other claims, and this Motion. (Pl.'s Mem. Opp'n at 10.)

For the reasons discussed below, Utica Mutual's Motion to Bifurcate will be denied.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 42(b), the Court has discretion to bifurcate separate claims and issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Bifurcating a trial "is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial judge in each instance." Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978) (citing Idzojtic v. Penn. R.R. Co., 456 F.2d 1228, 1230 (3d Cir. 1971)). The moving party bears the burden of showing that bifurcation would "serve judicial economy, avoid inconvenience, and not prejudice any of the parties." AstenJohnson v. Columbia Cas. Co., No. 03-1552, 2006 U.S. Dist. LEXIS 42606, 2006 WL 1791260, at *2 (E.D. Pa. June 22, 2006); see also Zurich Ins. Co. v. Health Sys. Integration Inc., No. 97-4994, 1998 U.S. Dist. LEXIS 5927, at *7-9 (E.D. Pa. April 28, 1998); Nathanson v. Aetna Cas. & Sur. Co., No. 01-CV-3377, 2001 U.S. Dist. LEXIS 18248, at *4 (E.D. Pa. Nov. 7, 2001).

**DISCUSSION**

Section 8371 [*5] of Title 42 of the Pennsylvania Code, which concerns bad faith insurance practices, states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may . . . (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%. (2) Award punitive damages against the insurer. (3) Assess court costs and attorney fees against the insurer.

42 Pa. Cons. Stat. Ann. § 8371. The Court of Appeals for the Third Circuit has defined "bad faith" as "frivolous or unfounded refusal to pay, lack of investigation into the facts, *or* a failure to communicate with the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (emphasis added). To prove a Section 8371 bad faith claim, a plaintiff must show "(1) that the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis." Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 244 F. App'x 424, 433-34 (3d Cir. 2007) (non-precedential) (citing Booze v. Allstate Ins. Co., 2000 PA Super 112, 750 A.2d 877, 880 (Pa. Super. Ct. 2000)).

Previously, [*6] the court of appeals has stated that "absent a predicate action to enforce some right under an insurance policy, an insured may not sue an insurer for bad faith conduct in the abstract," indicating that bringing a Section 8371 bad faith claim requires a predicate action arising under an insurance policy. Polselli v. Nationwide Mut. Fire Ins. Co., 126 F.3d 524, 530 (3d Cir. 1997). [3] Hence, a bad faith claim based solely on an underlying contractual claim generally will fail if a court or jury determines that the insurer did not have a duty to defend. See USX Corp. v. Liberty Mut. Ins. Co., 444 F.3d 192, 202 (3d Cir. 2006) (affirming summary judgment on insured's bad faith claim in favor of insurer because the bad faith claim "necessarily fails" because there was no coverage under the policy; see also Frog, Switch, 193 F.3d at 751 n.9 (affirming district court's reasoning that "bad faith claims cannot survive a determination that there was no duty to defend"); Still v. Great N. Ins. Co., 254 F. App'x 125, 128 n.3 (3d Cir. 2007) (per curiam) (non-precedential) (affirming dismissal of bad faith claim because the insured's malicious prosecution insurance claims were not covered under insurer's [*7] policy due to a "business pursuits" exclusion).

2008 U.S. Dist. LEXIS 48077, *

3   Polselli provides an in-depth discussion of whether a Section 8371 bad faith claim is an independent cause of action from the contractual claim. 126 F.3d at 529-30. While ultimately holding that attorney's fees incurred litigating a Section 8371 bad faith claim are recoverable by an insured under Section 8371, the court stated that the statutory language of Section 8371 makes it clear that a bad faith claim cannot "exist in a vacuum" and instead provides "additional remedies upon a finding of bad faith made in a predicate action under an insurance policy." Id. at 530. The Polselli court further stated that "at the very least . . . the predicate policy cause of action must be ripe before a Section 8371 cause of action may be recognized," indicating that a bad faith claim can be brought as long as a predicate policy cause of action is also brought. Id. (citing Doylestown Elec. Supply Co. v. Md. Cas. Ins. Co., 942 F. Supp. 1018, 1019-20 (E.D. Pa. 1996)) (emphasis added).

However, our court of appeals has also stated that "the concept of 'bad faith'" can extend "beyond an insured's denial of a claim in several limited areas." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) [*8] (citations omitted) (affirming summary judgment for insurer on insured's bad faith claim after holding that insured's omissions on her insurance application constituted bad faith as a matter of law). Indeed, there are exceptions where the court of appeals has viewed an insured's bad faith claim as independent from the insured's contractual claim based on the underlying insurance policy. For example, a bad faith claim may be independent of, and not contingent upon, the underlying contractual claim when (1) the underlying insurance claim has been settled, see Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co., 399 F.3d 224, 235 (3d Cir. 2005) (affirming a punitive damage award for a bad faith claim for "unreasonable delays" because, even though the insurance claim had been settled and paid, "Section 8371 allows punitive damages awards even in the absence of other successful claims brought by the plaintiff"); (2) the underlying insurance claim is barred by the statute of limitations, see Frog, Switch, 193 F.3d at 751 n.9 (holding that where the statute of limitations had expired rendering the breach of a duty to defend claim unredressable "it was still possible that a bad faith claim could [*9] succeed"); and, most relevant to Rohm and Haas's bad faith claim here, (3) when the plaintiff's bad faith claim is based on more or other than just the insurance company's refusal to provide coverage, see Gallatin Fuels, 244 F. App'x at 434-35 ("[A] finding that the [insurer] did not ultimately have a duty to cover the plaintiff's claim does not per se make the [insurer's] actions reasonable." (emphasis added)). 4

4   While both parties cited Gallatin Fuels in their briefs, neither party disclosed that the case is non-precedential. In fact, Rohm and Haas stated that "Gallatin Fuels controls this case." (Pl.'s Mem. Opp'n at 5 n.1.) Under the circumstances, while the case is informative, to say that it is "controlling" is at least an intemperate overstatement.

Indeed, under certain circumstances, district courts have refused to dismiss bad faith claims or sever them from the underlying contractual claim at the pre-trial stage. See Moss Signs, Inc. v. State Auto. Mut. Ins. Co., No. 08-164, 2008 U.S. Dist. LEXIS 26770, at *12-13 (W.D. Pa. April 2, 2008) (applying Gallatin Fuels to deny insurer's motion to dismiss insured's bad faith claims because the bad faith claims went beyond insurer's [*10] refusal to cover property damage); see also Frederick & Emily's Inc. v. Westfield Group, No. 03-CV-6589, 2004 U.S. Dist. LEXIS 17274, at *7-8 (E.D. Pa. Aug. 25, 2004) (denying insurer's motion to sever the bad faith claim from the breach of contract claim because "trial on the bad faith claim might very well proceed regardless of the outcome of the breach of contract litigation"); but see AstenJohnson, 2006 U.S. Dist. LEXIS 42606, 2006 WL 1791260 at *3 (granting insurer's motion to bifurcate the bad faith claim, finding that "if plaintiff is not ultimately successful on its claim for declaratory judgment, there will be no need for evidence to be introduced on the bad faith claim"). 5

5   However, as Rohm and Haas points out, one of the main reasons in that case that the court granted the motion to bifurcate was to avoid prejudice during trial to a second insurer at which the bad faith claim was not directed. AstenJohnson, 2006 U.S. Dist. LEXIS 42606, 2006 WL 1791260 at *3.

In Gallatin Fuels, because both the insurer and the insured mistakenly believed that the insurance policy existed at the time of the insurance claim, the insurer did not assert that the policy had been cancelled until six months after the insured made its claim. 244 F. App'x at 427-28. [*11] Ultimately, the court of appeals affirmed the jury's finding that the insurer acted in bad faith even though the court also found that, as a matter of law, the policy had been cancelled before the loss occurred. Id. at 433-35. The Gallatin Fuels court distinguished the facts of that case from Frog, Switch because, in Gallatin Fuels, the insured's bad faith claim was "based largely on behavior beyond [the insurer's] denial of the claim," whereas in Frog, Switch, the "sole basis for the bad faith claim . . . was the refusal to provide coverage." Gallatin Fuels, 244 F. App'x at 434-35.

In this case, Utica Mutual argues that Rohm and Haas's bad faith claim must fail if Plaintiffs are not successful on the underlying duty to defend claim. While the court of appeals' decisions are certainly consistent with Utica Mutual's basic arguments on this point, in cases in which the court held that the bad faith claims were dependant on the underlying contractual claim, the court made this determination after concluding that the underlying contractual claim had failed. See USX Corp., 444 F.3d at 202 (reversing the lower court's summary judgment ruling, holding that the insured's underlying injury claims [*12] were not covered by the policy, and thus the bad faith claim failed); see also Frog, Switch, 193 F.3d at 751 ("reject[ing] in the margin" plaintiff's bad faith claim after affirming lower court's dismissal of breach of contract claim because the insurance policy did not cover the underlying contract claim). In contrast, in this case, discovery is currently underway with respect to the duty to defend and bad faith claims, and there has not yet been a determination of the merits of the duty to defend claim. Moreover, the merits of the bad faith claim have not been briefed and are not actually at issue in this motion.

Based on the Gallatin Fuels line of cases, which allow for a Section 8371 bad faith claim to proceed even absent an underlying duty to defend, there is at least the possibility that Rohm and Haas's bad faith claim could exist independent of its duty to defend claim. See Gallatin Fuels, 244 F. App'x at 434-35; see also Moss Signs, Inc., 2008 U.S. Dist. LEXIS 26770 at *12-13; Frederick & Emily's Inc., 2004 U.S. Dist. LEXIS 17274 at *7-8. Rohm and Haas bases its bad faith claim on more than Utica Mutual's failure to defend, as, among other things, Rohm and Haas also claims that [*13] Utica Mutual acted in bad faith by failing to investigate the insurance claim and by requesting information "under the guise of claim investigation" while really attempting to "obtain a head start in litigation discovery." (Pl.'s Mem. Opp'n at 3; Am. Comp. PP 40, 44, 80.)

Exercising its discretion on this issue, the Court concludes that bifurcation of Rohm and Haas's bad faith claim from the underlying contractual claim would not necessarily be more convenient, expeditious, or economical, [6] because it is possible that a trial on the bad faith claim would proceed regardless of the outcome of the duty to defend claim. See Frederick & Emily's Inc., 2004 U.S. Dist. LEXIS 17274 at *7-8. It is likely that discovery on the duty to defend and bad faith claims will concern much of the same or related evidence and will involve deposing many of the same individuals about events that occurred in the same or reasonably close time period. Trying both claims together could be more or-

derly and efficient under all the pertinent circumstances, and, therefore, separating potentially overlapping discovery and trials, either or both of which might proceed independently, would be the "opposite of 'expeditious [*14] resolution of the litigation.'" Id. In addition, Utica Mutual has not shown that there would be any meaningful savings of time, money or effort by bifurcation. Indeed, the risk of prejudice to Utica Mutual by not bifurcating the issues at this time is unclear. Given the fervent arguments advanced by Utica Mutual, by having the claims proceed through pretrial procedures Utica Mutual can more efficiently determine whether the fruits of discovery will allow it to address the issues in a single dispositive motion at an earlier point in the litigation.

> 6   This ruling should not be used to attempt to justify unrestrained or expansive discovery which the Court will continue to oversee as needed.

## CONCLUSION

Although Section 8371 bad faith claims generally require a predicate contractual claim, it is possible that a bad faith claim that includes allegations beyond or other than the insurer's denial of coverage for the claim or of a duty to defend, such as the claim asserted by Rohm and Haas here, can proceed independently from the duty to defend claim. Utica Mutual has not demonstrated that bifurcation of the duty to defend claim and the bad faith claim would promote judicial economy, or avert undue [*15] prejudice or expense. Accordingly, Utica Mutual's Motion to Bifurcate is denied.

An Order consistent with this Memorandum follows.

## ORDER

**AND NOW,** this 20th day of June, 2008, upon consideration of Defendant Utica Mutual Insurance Company's Motion to Bifurcate (Docket No. 50), Rohm and Haas Company's and Morton International, Inc.'s Response in Opposition thereto (Docket No. 54), and Utica Mutual Insurance Company's Reply Brief (Docket No. 63), for the reasons discussed in the accompanying Memorandum, **IT IS ORDERED** that Utica Mutual Insurance Company's Motion to Bifurcate (Docket No. 50) is **DENIED.**

BY THE COURT:

/s/ Gene E.K. Pratter

GENE E. K. PRATTER

UNITED STATES DISTRICT JUDGE